**William L. LANIER, Jr., et al., Plaintiffs,**

v.

**FAIRFIELD COMMUNITIES INC., et al., Defendants.**

**No. 89–1253–CIV–T–13C.**

United States District Court, M.D. Florida, Tampa Division.

Jan. 17, 1990.

Gary N. Strohauer, Strohauer & Smith, P.A., Clearwater, Fla., for plaintiffs.

Theodore C. Taub, Joseph S. Jackson, Taub & Williams, P.A., Tampa, Fla., for defendants.

## INJUNCTION

CASTAGNA, District Judge.

The dispositive issue is whether the residential community known as "Pointe Alexis" qualifies as "housing for older persons" under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, which went into effect March 12, 1989. The parties agree that the issue can be decided by the Court on the evidence before it; they have filed a detailed stipulation as to many facts and they request expedited consideration.

Pointe Alexis is a residential community in Pinellas County, Florida that is being developed by the defendant, Fairfield Communities, Inc. Approximately 110 of 260 planned homes have been sold; the unsold lots are held in trust by the defendant trustee, Donald E. Scholl, pursuant to Fairfield's Pointe Alexis Trust of November 30, 1985. Prior to the sale of any property, Fairfield prepared and recorded a "Declaration of Conditions, Covenants and Restrictions for Fairfield Pointe Alexis." Incorporated in conjunction therewith was the Pointe Alexis Recreation Association, Inc., a not for profit, Florida corporation ("PARA"). At all times material, Fairfield Communities, Inc. was the only voting member of the PARA.

Section 8.3m of the Declaration provided that each Parcel be occupied by at least one

resident 40 years of age or older. It forbid residency by all persons under 18, and it restricted their visits to thirty nights within any six month period. Finally, it reserved for PARA the right to add rules and regulations it found "necessary to promote the adult nature of [the] community." To a large extent, however, the rights of private persons to establish and maintain such "adult communities" has since been abolished by the United States Congress in the "Fair Housing Amendments Act of 1988," Pub.L. No. 100–430 (1988), *amending* 42 U.S.C. § 3601 *et seq.* (the "Act"). Effective March 2 of 1989, the Act prohibits, *inter alia,* discrimination in housing against families with minor children. The Act creates an exception in the case of "housing for older persons." 42 U.S.C. § 3607(b)(2)(C); 24 CFR § 100.304 (1989). Such housing is identified by three factors:

1. At least 80% of the units are occupied by at least one person 55 years of age or older (not counting unoccupied units, so long as at least 80% of the unoccupied units are reserved for occupancy by at least one person 55 years of age or older);

2. The housing has 'significant facilities and services specifically designed to meet the physical or social needs of older persons;' and

3. The owner or manager of the housing facility publishes and adheres to policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older.

*Id.*

In response,[1] PARA amended Section 8.3m of its Declaration to provide as follows:

Each Parcel shall be used and occupied by at least one resident who is 55 years of age or older, PROVIDED that this requirement shall be prospective in application, and shall not prohibit the use and occupancy of a Parcel by persons who

---

1. The defendants readily concede that the changes they made were designed to qualify Pointe Alexis for the exception. *See* Response to the Motion for Preliminary Injunction, *filed* November 2, 1989 at 3. The Act does not purport to prohibit such an effort.

used and occupied the Parcel prior to the effective date hereof.[2]

The PARA reserved for itself the right to permit the use and occupancy by residents all of whom are under 55 years of age when the following conditions are met:

1. Notwithstanding such use and occupancy, at least 80% of all occupied Parcels are occupied by at least one resident who is 55 years of age or older;

2. At least one of the residents of the Parcel is either (i) a surviving or remaining prior occupant or heir in cases where death, divorce, separation, or disability causes a resident's occupancy to terminate; (ii) an employee or other agent of the Master Association who performs substantial duties directly related to the management or maintenance of the property subject to the Covenants; or (iii) a person who is 40 years of age or older; and

3. Such use and occupancy does not cause the property subject to the Covenants to fail to qualify as 'housing for older persons' within the meaning of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended.

The amendment also added that:

No Parcel shall be occupied by a person who is less than 18 years of age except as a guest of the residents. Visits by persons less than 18 years of age as guests of the residents shall not exceed thirty (30) nights in any six (6) month period. The Master Association shall have the right to make such additional rules and regulations regarding persons less than 18 years of age as it deems necessary to promote the adult nature of this community, and shall also have the right to make such additional rules and regulations as it deems necessary to prevent the property subject to the Covenants from failing to qualify as 'housing for older persons' within the meaning of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended.

Pursuant to the above, the defendants discriminate and will continue to discriminate in the sale and management of housing on the basis of age unless enjoined from doing so by the Court. *See* Stipulation, filed November 3, 1989 at 4–5, par. 7.

The plaintiffs are owners and/or occupants of nine parcels in Pointe Alexis. At least some of them wish to lease or sell their property and believe they would have an easier time doing so if they could defeat that part of the Declaration which provides for age restrictions. They stipulate that at least 80% of the units are occupied by at least one person 55 years of age or older. *See* Supplemental Stipulation, filed November 9, 1989 at 1, par. 2. Their stipulation is less certain as to whether the defendants are adhering to published policies and procedures that demonstrate an intent to provide housing for persons 55 years of age or older. *See Id.* at 4–7, pars. 7–9. Nonetheless, a determination of whether that condition is met spills over into a determination of whether the next condition is met and, since it is not, that next condition is dispositive without reference to the others: Pointe Alexis does not have "significant facilities and services specifically designed to meet physical or social needs of older persons" and therefore it is not excepted from the anti-discrimination provisions of the Fair Housing Act.

The Court is aware of no others which have considered the parameters of the phrase, "significant facilities and services specifically designed....", although the phrase is discussed in the Federal Regulations. *See e.g.,* 54 Fed.Reg. 3256 (January 23, 1989). Nonetheless, the facts of the instant case do not necessitate the drawing of fine lines. Pointe Alexis does not have facilities or services specifically designed to meet the physical or social needs of older persons; therefore the Court need not probe the boundaries of "significant." The entirety of the defendants' claim to having fulfilled the "facilities or services" condition is limited to the following five assertions:

---

**2.** The amendment was recorded November 2, 1989. *See* Stipulation, filed November 3, 1989 at 3.

1. After noting the plaintiffs' suggestion that Pointe Alexis is not physically accessible to infirm persons because of "obstacles" such as stairs and curbs, etc., the defendants point out that zoning regulations require housing to be at least twelve feet above sea level and therefore stairs are necessary.

2. The defendants point out that, according to the Federal Regulations, "housing for older persons" is not limited to housing for those persons incapable of living independently.

3. The defendants conclude without establishing any foundation that "[we] have clearly not simply thrown 'a couch in a laundry room and label[ed] it a recreation center,'" citing to 54 Fed.Reg. 3256.

4. The defendants concede that the recreational facilities that they provide (i.e., swimming pool, tennis courts etc.) are "equally useable by persons of all age ...", but complain that "it is difficult to conceive how such facilities could be specifically designed for use only by older persons."

5. After noting that some residents engage in voluntary social activities, the defendants note that nothing in the Act or its implementing regulations requires that the owner or manager of the property provide the services.

*See* Response to Motion for Preliminary Injunction, filed November 2, 1989 at 5–8. Far from establishing the existence (let alone the significance) of any services for the elderly, the defendants have merely indicated what they cannot and are not required to do under the Act. In contrast, the plaintiffs provide evidence to establish that all of the Pointe Alexis homes have substantial flights of stairs inside and outside. *See e.g.*, Shalkowski Affidavit, at 2. Many of the homes have no rear exists

leaving a window as an elderly person's only rear escape in case of fire. *Id.* The sidewalks are inadequate for persons with canes, wheelchairs and walkers since they are situated only in front of existing homes and do not extend from streets to clubhouses, etc. *Id.* The sidewalks house storm grates which pose a hazard to the elderly. *Id.* None of the curbing has ramps; it is about 4—5 inches high and there are no lined crosswalks. *Id.* at 3. There are no benches situated anywhere in the community except on the tennis courts. *Id.* Access to existing facilities is made more difficult by the absence of handrails, wide doors, rear exits, ramps, etc., and by the existence of numerous stairwells and difficult "angle[s] of entry." *Id.*[3]

Among the more significant of the defendants' concessions is that "Pointe Alexis has no facilities specifically designed to meet the physical needs of older persons, other than a ramp at the front entrance of the clubhouse." Stipulation, at 8, par. 9 C. With regards to the social needs of the elderly, the parties stipulate to the following:

1. Pointe Alexis is a residential community two miles from the nearest shopping, medical and outside social and recreational facilities.

2. Pointe Alexis has no congregate dining facilities, health facilities, stores, restaurants or commercial entities.

3. The defendants provide no transportation services whatsoever.

4. With one exception *, all social events which have taken place in Pointe Alexis have been voluntarily organized and operated by its residents, although the defendants provided some financial support for parties. Those events included:

A. Ten group outings (i.e., to the theatre or a potluck dinner, etc.)

B. Several seminars (* only one of which the defendants conducted) by persons such as an insurance agent

---

**3.** *See also* Morissette Affidavit, at 1–7 (indicating that "Pointe Alexis has no significant facilities and services specifically designed to meet the physical and social needs of older persons" and

that, in fact, the size of the residences [i.e., many are three bedrooms] and other factors indicate that Pointe Alexis is not designed for the elderly).

(on Medicare), a hearing aid salesman (demonstrating his wares), and one stock broker (seeking clients).

C. Tennis games or coffees held regularly by some of the residents.

D. An exercise class led at the pool by one resident who is not a qualified physical education instructor; and informal instruction by some of the residents for some of the others on use of the lapidary and the kiln.

5. The residents have organized a sign-up board for persons willing to provide transportation to others (the plaintiffs do not know of any instance in which it has been put to use); and the residents have organized an emergency telephone network after one patient escaped from a local psychiatric facility.

6. None of the defendants are obligated to provide, sponsor or participate in any social or recreational programs.

7. The defendants provide no instruction for and organize no activities in relation to the various recreational facilities (i.e., swimming pool, tennis courts, etc.) on the premises.

8. The defendants do not provide any continuing education, welfare, information, counselling, homemaker or referral services.

9. The defendants do not provide emergency or preventative health care programs.

10. None of the homes are equipped with emergency call buttons or other devices (apart from telephones and burglar alarms installed at each homeowner's expense) for summoning nursing, paramedic or other emergency services.

11. It would not be impracticable to provide social facilities or services specifically designed for the elderly.

12. The defendants do provide landscaping and lawn maintenance for the common areas but all maintenance and repairs with respect to the exterior or interior of the structures of the homes are strictly the responsibility of the individual homeowners.

*See* Stipulation, at 8–11.

Upon consideration of the above and of the evidence in the file, the Court hereby concludes that Pointe Alexis does not meet the conditions necessary to qualify under the "housing for older persons" exception to the anti-discrimination provisions of the Fair Housing Act because it does not have significant facilities and services specifically designed to meet the physical or social needs of older persons.

Accordingly, the defendants and their officers, agents, servants, employees, and attorneys are hereby:

1. Enjoined from taking any action to enforce Article VIII Section 8.3m of the "Declaration of Conditions, Covenants and Restrictions for Fairfield Pointe Alexis" and the Sixth and Seventh Amendments thereto.

2. Enjoined from making any representations to any person that the Declaration precludes families whose members are under 55 from purchasing, renting or otherwise occupying Pointe Alexis homes; and,

3. Commanded to deliver copies of this Order to each homeowner at Pointe Alexis and to post a copy at a conspicuous place within the sales offices at Pointe Alexis.

4. The clerk is directed to enter final judgment in this case in favor of the plaintiffs enjoining the defendants from violating the Fair Housing Act as considered herein.

DONE AND ORDERED.