**PARK PLACE HOME BROKERS,**
**et al., Plaintiffs,**

**v.**

**P–K MOBILE HOME PARK,**
**et al., Defendants.**

**Civ. No. 3:89CV7609.**

United States District Court,
N.D. Ohio, W.D.

July 24, 1991.

Stephen Dane, Toledo, Ohio, for plaintiffs.

Joan Szuberla, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

JOHN W. POTTER, District Judge.

This consolidated cause is before the Court on the motion for partial summary judgment of plaintiff Park Place Home Brokers, Russell Wainer, and Toledo Fair Housing Center (collectively the Fair Housing plaintiffs), plaintiff United States of America's motion for partial summary judgment, defendants' motion for summary judgment, the Fair Housing plaintiffs' opposition to defendants' motion, the United States' opposition to defendants' motion, defendants' opposition to the motions of all plaintiffs, and defendants' reply to plaintiffs' oppositions to defendants' motion.

Plaintiff Park Place Home Brokers (Park Place) is a manufactured housing broker. Park Place earns a commission by bringing together buyers and sellers of mobile homes. Park Place is owned and operated by plaintiff Russell S. Wainer. On a number of occasions after March 12, 1989,[1] Park Place claims that it attempted to arrange for the sale of mobile homes located in P–K Mobile Home Park to families with children. Park Place further claims that it was prohibited from doing so because P–K expressed a policy of not admitting families with children into the park. Toledo Fair Housing Center is a public service agency. Its general purpose is to promote fair housing throughout the Toledo area. Due to the no children policy of the defendants' mobile home parks, the Fair Housing Center claims to have had its institutional interests impaired. See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124–25, 71 L.Ed.2d 214 (1982) (Plaintiff's institutional interests alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction).

The United States is the other plaintiff in this lawsuit. The United States claims that, sometime around March 10, 1989, Carolyn Gray purchased a mobile home on lot 89 in P–K Mobile Home Park from defendant Larry Ward. It further claims that after Mr. Ward became aware that Ms. Gray had her son Daniel, who is under the age of eighteen, living with her and that upon confirming that Ms. Gray was not going to send Daniel elsewhere, defendants sent Ms. Gray a notice dated July 28, 1989 stating that her lease would terminate on August 31, 1989 unless she complied with park rules prohibiting residence by children. The United States obtained a restraining order prohibiting defendants from making good on their intention to evict Ms. Gray. After Ms. Gray complained of defendants' actions, the Secretary of HUD investigated the incident and charged defendants with discrimination. HUD's administrative authority can be found at 42 U.S.C. § 3610(g)(2)(A). Pursuant to 42 U.S.C. § 3612(a), defendants elected to have this charge heard in federal court. Therefore, the United States brought Count I of the complaint on behalf of Ms. Gray. Pursuant to its authority under 42 U.S.C. § 3614(a), the United States brought Count II of the complaint alleging that defendants are engaged in a pattern or practice of discrimination on the basis of familial status.

Defendants in this action are the P–K Mobile Home Park, the Moonlight Mobile Home Parks, Inc., and the owners of the corporation and mobile home parks involved here, Luella and Larry Ward. The Wards, through their corporation, Moonlight Mobile Home Parks, Inc., own and operate three mobile home parks. Aside from defendant P–K Mobile Home Park, the Wards also own and operate Moonlight Mobile Home Park and O.K. Mobile Home Park. Although Moonlight Park and O.K. Park are not defendants in these consolidated cases, they are involved because of

---

1. Though the 1988 amendment to the Fair Housing Act was signed into law on September 13, 1988, the amendment became effective on March 12, 1989.

their affiliation with Moonlight Mobile Home Parks, Inc. and the Wards. Plaintiffs accuse the defendants of violating the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

In 1988, the Fair Housing Act was amended to prohibit housing discrimination on the basis of familial status. Congress defined the term familial status to mean:

one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

42 U.S.C. § 3602(k). As an exception to its broad sweeping declaration that housing providers may no longer discriminate against people based on the presence of children in their home, Congress recognized the needs and desires of older citizens. In this light, Congress held that the prohibition against familial status discrimination does not apply to "housing for older people." 42 U.S.C. § 3607(b)(1). Housing for older persons means housing—

(A) provided under any State or Federal program that the Secretary [of Housing and Urban Development] determines is specifically designed and operated to assist elderly persons (as defined in the State or Federal program); or

(B) intended for, and solely occupied by, persons 62 years of age or older; or

(C) intended and operated for occupancy by at least one person 55 years of age or older per unit. In determining whether housing qualifies as housing for older persons under this subsection, the Secretary shall develop regulations which require at least the following factors:

(i) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and

(ii) that at least 80 percent of the units are occupied by at least one person 55 years of age or older per unit; and

(iii) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older.

42 U.S.C. § 3607(b)(2). The Department of Housing and Urban Development (HUD) has issued regulations at 24 C.F.R. §§ 100.-300, 100.304 to flesh-out the conditions under which entities may claim the "housing for older persons" exemption.

■ Defendants admit that they discriminate against families with children at each of the mobile home parks. Defendants' Memorandum In Support of Their Motion for Summary Judgment at 1. However, defendants claim to be exempt from the familial status provision of the Act because they claim to provide housing for older persons as that term was defined above in 42 U.S.C. § 3607(b)(2). Defendants claim that the three mobile home parks have been moving gradually toward providing a place for older persons of modest income to live without the distractions which families with children might provide. Defendants bear the burden of establishing that they qualify as exempt housing for older persons under the Act. *United States v. Keck*, No. C89–1664C, slip op. at 9 (W.D.Wash. Nov. 15, 1990); *Lanier v. Fairfield Communities, Inc.*, 776 F.Supp. 1533 (M.D.Fla.1990); *Secretary of HUD v. Murphy*, Fair Hous. Fair Lend. ¶ 25,002 at 25,044 (July 13, 1990) (an opinion from a HUD Administrative Law Judge).

Defendants claim the 55 or older exemption provided by 42 U.S.C. § 3607(b)(2)(C). There appears to be no dispute that defendants satisfy the requirement in 42 U.S.C. § 3607(b)(2)(C)(ii) that at least eighty percent of the units in the parks be occupied by at least one person 55 years of age or older per unit. Though there is some dispute as to whether defendants have met the requirement in 42 U.S.C. § 3607(b)(2)(C)(iii), the publication require-

ment, the difficult issue in this case turns on the determination of whether defendants have met their burden of demonstrating their compliance with the requirements in 42 U.S.C. § 3607(b)(2)(C)(i). The issue arises for the Court in the context of cross-motions for summary judgment, and the parties claim that the issue is one for the Court to decide. None of the parties claim the existence of a genuine issue of material fact. Indeed, the parties have agreed upon most of the "facts" in this case. Therefore, the Court will resolve the issue pursuant to the following standard.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). *Ralph Shrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. *Id.* A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 324–325, 106 S.Ct. at 2553–2554. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. "[P]laintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257, 106 S.Ct. at 2514.

As mentioned above, the Secretary of HUD implemented Congress' directive in 42 U.S.C. § 3607(b)(2)(C) by issuing regulations at 24 C.F.R. § 100.304.

(a) The provisions regarding familial status shall not apply to housing intended and operated for occupancy by at least one person 55 years of age or older per unit, *Provided That* the housing satisfies the requirements of 100.304(b)(1) *or* (b)(2) *and* the requirements of § 100.-304(c).

(b)(1) The housing facility has significant facilities and services specifically designed to meet the physical or social needs of older persons. "Significant facilities and services specifically designed to meet the physical or social needs of older persons" include, but are not limited to, social and recreational programs, continuing education, information and counseling, recreational, homemaker, outside maintenance and referral services, an accessible physical environment, emergency and preventive health care of programs, congregate dining facilities, transportation to facilitate access to social services, and services designed to encourage and assist residents to use the services and facilities available to them (the housing facility need not have all of

these features to qualify for the exemption under this subparagraph); or

(2) It is not practicable to provide significant facilities and services designed to meet the physical or social needs of older persons *and* the housing facility is necessary to provide important housing opportunities for older persons. In order to satisfy this paragraph (b)(2) of this section the owner or manager of the housing facility must demonstrate through credible and objective evidence that the provision of significant facilities and services designed to meet the physical or social needs of older persons would result in depriving older persons in the relevant geographic area of needed and desired housing. The following factors, among others, are relevant in meeting the requirements of this paragraph (b)(2) of this section—

(i) Whether the owner or manager of the housing facility has endeavored to provide significant facilities and services designed to meet the physical or social needs of older persons either by the owner or by some other entity. Demonstrating that such services and facilities are expensive to provide is not alone sufficient to demonstrate that the provision of such services is not practicable.

(ii) The amount of rent charged, if the dwellings are rented, or the price of the dwellings, if they are offered for sale.

(iii) The income range of the residents of the housing facility.

(iv) The demand for housing for older persons in the relevant geographic area.

(v) The range of housing choices for older persons within the relevant geographic area.

(vi) The availability of other similarly priced housing for older persons in the relevant geographic area. If similarly priced housing for older persons with significant facilities and services is reasonably available in the relevant geographic area then the housing facility does not meet the requirements of this paragraph (b)(2) of this section.

(vii) The vacancy rate of the housing facility.

24 C.F.R. § 100.304(a), (b).

The Court will first address defendants' claim that the three parks provide "significant facilities and services specifically designed to meet the physical or social needs of older persons." 24 C.F.R. § 100.-304(b)(1). The seven factors listed in the regulations as meeting this requirement are non-exclusive. Defendants claim that they weighed such factors as the locations of the parks, the mobility of the residents, the rental rates, vacancy rates, availability of nearby services and facilities, the cost of adding facilities, space limitations, and the perceived desires and needs of their older person residents. Defendants do not claim to provide many on-site facilities at the three parks. They claim to provide the following amenities at every park: well-lighted park grounds, natural gas service hookup, winter snow removal of access drives, grass cutting of common areas, and strictly enforced park rules and regulations. At the Moonlight and O.K. parks, defendants provide a heated laundry facility. They also provide rental lockers at a fee of $1.50 per month. There is a 40 × 400 foot grassy area between Moonlight and O.K. Parks where residents may "walk" their small pets. Mr. and Mrs. Ward live on-site at Moonlight Park "for any emergency needs of their residents, mobile home repair, or maintenance." Defendants' Memorandum at 10. Defendants maintain bulletin boards at all three parks to "inform and encourage the residents' use of the programs, services, and facilities available to them in the community at-large." Defendants' Memorandum at 11. The bulletin boards also provide information about toll-free health hotline numbers, a list of mobile home repair/maintenance services, meal delivery and transportation services, and monthly events scheduled at the West Toledo Senior Center. On September 1, 1990, defendants placed a van into service to transport residents of the mobile home parks to social services and programs in the City of Toledo.

■ The Court finds that the facilities and services provided on-site by defendants do not meet the Congressional and regulatory definition of "significant facilities and services specifically designed to meet the physical or social needs of older persons." 24 C.F.R. § 100.304(b)(1). Though the Secretary of HUD did not intend the list of factors at § 100.304(b)(1) to be an exclusive list, the most defendants can claim to have done is to have provided those facilities and services which any landlord expecting to please his or her tenants would provide and information regarding facilities and services in which elderly citizens might be interested. The transportation van and the bulletin board are not enough standing alone, though they would be evidence of "significant facilities and services" if presented as part of a greater package.

■ In arguing that they meet the standard in § 100.304(b)(1), defendants place the greatest reliance on the off-site facilities and services which they claim are available to residents of their mobile home parks. Defendants claim that each of the parks is located near or adjacent to facilities and services which do meet the requirement in § 100.304(b)(1). By relying on these off-site facilities and services, defendants claim that their parks provide significant facilities and services. Defendants support their argument that they be allowed to "piggy-back" these off-site provisions by citing the testimony of HUD investigator Ivory Smith. After this litigation commenced, plaintiffs deposed Mr. Smith on August 2, 1990. At his deposition, Mr. Smith told defendants that off-site facilities and services would be considered if the housing facility furnished transportation for the residents. Ivory Smith Dep. at 29–30. Defendants claim that they purchased the van in reliance on this testimony.

The Court finds that the off-site facilities and services may not be taken into consideration in determining whether defendants have provided "significant facilities and services." Noticeably absent from the statute, its legislative history, and the regulations promulgated under it is any mention that the "location" of the housing is a factor a court should take into account when deciding the question which this Court must decide. In reaching this conclusion, the Court agrees with the Administrative Law Judge in *HUD v. Murphy.*

As a general rule, the availability of senior centers elsewhere in the same geographic location does not tend to set a particular community apart. Vicarious use of these facilities by particular communities would give any "community" the right to claim the right to discriminate against families if it met the other tests. This construction could lead to situations where large numbers of communities exclude families with children, basing their claims on the availability of the identical public facilities. This would vitiate the facilities and services requirement.

*HUD v. Murphy,* Fair Housing–Fair Lending (P–H) ¶ 25,002 at 25,046 (HUD Office of Administrative Law Judges, July 13, 1990). The Court also agrees with Judge Coughenour in *United States v. Keck,* No. C89–1664C, slip op. at 11 (W.D.Wash. Nov. 15, 1990), that "[a]lthough the examples in the regulations are not exclusive, a housing provider must offer its tenants a package of facilities and services that indicates a genuine commitment to serving the special needs of older persons." Defendants have not presented such evidence. The location of defendants' mobile home parks appears merely fortuitous. There is no evidence that defendants chose the location of the parks with an eye to providing low cost housing to elderly people. Though defendants claim that tenants in their parks do not want additional facilities and services, there is no evidence in the record of studies or surveys being done by defendants to verify their claim. Though the Court's decision should not be interpreted as a finding that location may never be a factor supporting a defendant's argument that it provides significant facilities and services, for location to be such a factor, a defendant must present more evidence of a "genuine commitment" than the current defendants have provided.

■ The Court will now address defendants' claim that it is not practicable to

provide significant facilities and services and that their housing is necessary to provide important housing opportunities for older persons. See 42 U.S.C. § 3607(b)(2)(C)(i); 24 C.F.R. § 100.304(b)(2). The threshold factor listed in the regulations for the Court to consider is a determination of whether the owner or manager of the facility has *endeavored* to provide significant facilities and services. This regulation cautions that a defendant's demonstration that it is expensive to provide such services and facilities is *not alone sufficient* to demonstrate impracticability. 24 C.F.R. § 100.304(b)(2)(i). Defendants may satisfy their burden by setting forth credible and objective evidence. *Id.*

■ The Court finds that the evidence offered by defendants supports, at best, an argument that it would be expensive to provide the facilities and services required by the Act. As mentioned above, defendants have not submitted any credible estimates of how much it would cost to construct complying facilities at their parks. In fact, defendants admit that Larry Ward did not get independent cost estimates for constructing a new facility. Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 13. All the Court has before it is defendant Larry Ward's opinion that it would cost between $20,000 and $100,000 to construct a community building. Defendants claim that Mr. Ward's experience as a handyman qualifies his opinion as credible and objective evidence. The Court disagrees and, due to defendants' failure to offer any other evidence of impracticability, the Court finds that defendants have not met their burden here.

■ In *Murphy,* the Administrative Law Judge held that the necessity test [i.e. the last clause in 42 U.S.C. § 3607(b)(2)(C)(i) which asks whether the housing is necessary to provide important housing opportunities for older persons] only comes into play if the impracticability test has been satisfied. *HUD v. Murphy,* Fair Housing–Fair Lending (P–H) 25,002 at 25,048 (HUD Office of Administrative Law Judges, July 13, 1990). The Court agrees. Having

found that defendants have failed to satisfy the impracticability test, the Court finds it unnecessary to examine the necessity test.

■ The final area of contention which the Court must address is defendants' constitutional claims. Defendants first claim that the HUD regulations are arbitrary and capricious. In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court set forth the standards for judicial review of an agency's construction of a statute that it administers.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz,* 415 U.S. 199, 231 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. The Court must give considerable weight to HUD's construction of the Fair Housing Act, and it must also give deference to HUD's interpretation of the Act. *Id.* at 844, 104 S.Ct. at 2782. The Court agrees with plaintiffs that the intent of Congress in passing the Act was to stop discrimination in housing against families with children. However, in so doing, Congress chose to create an exemption for communities designed to meet the needs of citizens 55 years of age and older. This exemption must be narrowly construed in order to preserve the balance Congress intended to strike between housing for older persons and the prohibition against familial status discrimination. Given this construction of the statute, the Court finds nothing in the regulations that is arbitrary, capricious, or manifestly contrary to the statute.

■ Defendants next contend that the statute violates their due process rights because it is unconstitutionally vague. A law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The Court finds no such constitutional infirmity in the Fair Housing Act and its 1988 amendment.

■ Defendants' final argument is that the statute violates their right to equal protection. First, the Court finds no Congressional intention to make elderly citizens of modest income a "sensitive" class. The "rational relationship" test is therefore the appropriate criterion for evaluating statutes like the one here, which involve purely economic and social legislation. Applying the test, the Court finds that the Fair Housing Act and its 1988 amendment are rationally related to a legitimate government interest. Thus, the Court finds no violation of defendants' equal protection rights.

■ Throughout their various memoranda, defendants appear to argue that they should be "grandfathered in" under the Act; i.e. that because they have been moving steadily over a period of years toward the community they now have, they should be found exempt from the prohibition against familial status discrimination. Though this argument has some appeal in a senior citizen context, it has none in the law.

The Court finds that defendants are guilty of familial status discrimination. The "55 and over" exemption does not apply to defendants. Plaintiffs are thus entitled to a permanent injunction.

This cause will proceed to a trial to determine what damages, if any, to which plaintiffs are entitled.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the Fair Housing plaintiff's motion for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the United States' motion for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that defendant's motion for summary judgment be, and hereby is, DENIED; and it is

FURTHER ORDERED that defendants are enjoined from (1) refusing to rent, or refusing to negotiate for the rental of, or otherwise making unavailable for denying, lots for the location of mobile home structures because of familial status; (2) discriminating against any person in the terms, conditions, or privileges of rental of lots for the location of mobile home structures, or in the provision of services or facilities in connection therewith, because of familial status; and (3) making, printing, or publishing any notice, statement, or advertisement with respect to the rental of lots for the location of mobile home structures indicating any preference, limitation or discrimination based on familial status; and it is

FURTHER ORDERED that this case is scheduled for a pretrial conference on August 26, 1991 at 3:45 P.M.