**UNITED STATES of America, Plaintiff–Appellant,**

v.

**CITY OF HAYWARD, Defendant–Appellee.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**CITY OF HAYWARD, Defendant–Appellant.**

Nos. 93–15190, 93–15195.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1994.

Decided Sept. 19, 1994.

---

Kathy M. Banke, Crosby, Heafey, Roach & May, Oakland, CA, for defendant-appellee and cross-appellant.

Lisa Stark, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant and cross-appellee.

Before: FLETCHER and TROTT, Circuit Judges, and KING,* District Judge.

TROTT, Circuit Judge:

In response to the 1988 Fair housing Act ("FHA") Amendments prohibiting discrimination based on familial status, a mobilehome park owner terminated the park's adults-only status. A city-appointed arbitrator concluded that this change in policy decreased the housing services provided by the park to its

* The Honorable Samuel P. King, Senior District Judge for the District of Hawaii, sitting by desig-

nation.

tenants and accordingly required the owner to reduce the rent pursuant to a city rent control ordinance. The United States sued the City of Hayward in federal court for violating § 3617 of the FHA. The district court granted summary judgment for the United States because it concluded that, as a matter of law, the City may not penalize the mobilehome park's owner for complying with federal law. The district court permanently enjoined the City from interpreting its ordinance in a manner that conflicts with the FHA and ordered the park's base rent restored to the level it would have been absent the arbitrator's ruling, but did not award compensatory or punitive damages. 805 F.Supp. 810. The City appeals summary judgment, and the United States cross-appeals the court's refusal to award compensatory damages. We affirm summary judgment but reverse the district court's denial of compensatory damages.

## I

S.G. Borello & Sons, Inc. ("Borello") has been the owner and operator of the Eden Roc Mobilehome Park in Hayward, California since 1984. Until 1989, the park had a written policy to rent only to tenants over 18 years of age. As a result of this policy, by December 13, 1988, over 80% of Eden Roc's units were occupied by at least one person age 55 or older.

■ In 1988 Congress amended the FHA to prohibit discrimination against families with minor children. See Fair Housing Amendments Act of 1988, Pub.L. No. 100–430, 102 Stat. 1619 (codified as amended at 42 U.S.C. §§ 3601–3631 (1988)). Congress found wide-spread discrimination against families with children and enacted the 1988 Amendments to protect this social institution from discriminatory housing practices. H.R.Rep. No. 711, 100th Cong., 2d Sess., 19–21 (1988), reprinted in, 1988 U.S.C.C.A.N. 2173, 2180–81 [hereinafter House Report]. The goal of the FHA was to make more housing opportunities available to families with children. Nevertheless, Congress recognized a need for senior housing and creat-

ed an exclusion for "housing for older persons." Pub.L. No. 100–430, § 6, 102 Stat. at 1622 (codified at 42 U.S.C. § 3607(b) (1988)). The 1988 Amendments became effective in March of 1989. See id. § 13(a), 102 Stat. at 1636.

Confronted with the 1988 Amendments, Borello initially considered making the park a senior housing facility, in accordance with the FHA's senior housing exemption. See 42 U.S.C. § 3607(b). But, when it concluded that Eden Roc would not qualify for the senior housing exemption, Borello decided to end the park's adults-only policy and so notified the residents. The first family with children moved into the park in the summer of 1989. On January 1, 1990, Borello issued new park rules making the park a family park, effective July 2, 1990.

On January 16, 1990, approximately 190 park tenants filed a petition with the City of Hayward's Rent Review Office. They sought a rent reduction under the City's rent control ordinance, on the ground that admitting children to the park constituted a reduction in housing services. The City's rent control ordinance provides:

> In any case where the arbitrator determines that a reduction in services has effectively resulted in an increase of rent without notice thereof, the arbitrator may either order the owner to fix, repair or otherwise cure the reduction in services, or reduce the rent owed to the owner in an amount that will compensate the tenant for such reduction in services.

City of Hayward Ord. No. 89–057 C.S. § 8(k). The City Rent Review Office assigned the tenants' petition to an arbitrator.[1] On March 13, 1990, Borello filed a complaint in state court, seeking to enjoin the petitioners' actions. Two weeks later, the state court dismissed the complaint.

On May 30, 1990, the arbitrator granted the tenants' petition. She reasoned that maintaining an adults-only environment constituted a service and that by removing the restriction, the owner deprived the tenants of this service. Consequently, the arbitrator

---

1. Section 5(d) of the ordinance provides: "Upon receipt of the petition, the Rent Review Officer shall, within three (3) working days, assign an arbitrator."

ordered a permanent reduction in the tenants' base rents by the amount of the most recent rent increase—approximately $6.60 per month per tenant.

Borello then filed a petition in state court for a writ of mandamus against the City, requesting that the arbitrator's decision be set aside. The court denied the petition. Borello also filed administrative complaints with the Secretary of the Department of Housing and Urban Development ("HUD"), alleging the City interfered with Borello's ability to encourage families with children to live at the mobilehome park. The Secretary referred the matter to the Attorney General of the United States, *see* 42 U.S.C. § 3610(g)(2)(C) (1988), who filed this action in federal court against the City of Hayward for violating § 3617 of the Fair Housing Act, *see id.* § 3614(b)(1)(A).

The district court granted summary judgment for the United States. The court concluded that, as a matter of law, the City of Hayward had violated § 3617 of the FHA because the arbitrator's decision "penalize[d] and interfere[d] with Borello's decision to provide housing to families with children." The district court permanently enjoined the City from interpreting its ordinance in such a manner but denied the United States' request for compensatory and punitive damages. Both parties appeal.

## II

"A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### A.

We are first asked to determine whether, under § 3617 of the FHA, the rent reduction constituted "interference" with the mobilehome park owner on account of its action in encouraging families with children to live in the park. We hold that it did.

The FHA provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person ... on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605 or 3606 of this title." 42 U.S.C. § 3617 (1988). "[T]he language 'interfere with' has been broadly applied 'to reach all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws." *Michigan Protection & Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) (quoting *United States v. American Inst. of Real Estate Appraisers*, 442 F.Supp. 1072, 1079 (N.D.Ill.1977)); *see also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972) ("The language of the [FHA] is broad and inclusive."). Courts have found various types of conduct to constitute "interference." "Interference" ranges from racially motivated firebombings, *see Stirgus v. Benoit*, 720 F.Supp. 119, 123 (N.D.Ill.1989), to exclusionary zoning, *see United States v. City of Birmingham*, 727 F.2d 560, 563 (6th Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *United States v. City of Black Jack*, 508 F.2d 1179, 1188 (8th Cir. 1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975), and insurance redlining, *see Laufman v. Oakley Bldg. & Loan Co.*, 408 F.Supp. 489, 497–98 (S.D.Ohio 1976). Recently, however, the Sixth Circuit concluded that economic competition did not constitute interference. *Michigan Protection*, 18 F.3d at 347 (finding no § 3617 violation where neighbors outbid a prospective purchaser who intended to use the residence as a group home for mentally disabled students).

The City argues the rent reduction did not constitute a penalty or interference, but was simply a reflection of the reduced value of housing services. We reject this argument because we cannot attach value to unlawful discrimination. The Supreme Court has suggested that the law should not sanction private biases. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448–49, 105 S.Ct. 3249, 3258–59, 87 L.Ed.2d 313 (1985); *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984) ("Private biases

may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."). Therefore, if the difference in the value of housing services was solely attributable to the termination of a discriminatory practice, we cannot recognize that change in value as legitimate.

The arbitrator's conclusion that changing the adults-only policy reduced housing services hinged on her determination that the tenants would no longer be "assured the stability and predictability of their environment." Her decision provided no explanation how changing the adults-only policy reduced housing services, other than to reflect the lost value of a discriminatory practice. If Borello had terminated certain services, there might have been a legitimate basis for reducing the rent, but because Borello's only act was to terminate the adults-only policy, the reduction in the value of housing services was caused solely by the change in policy.

The City argues that by exempting senior housing from the familial-status provisions of the FHA, Congress recognized that senior housing has extrinsic value and that the rent reduction merely reflected the loss of this value. We agree Congress recognized that senior housing has some legitimate value, otherwise it would not have created a senior housing exemption. But the structure of the senior housing exemption suggests Congress based this value on the fact that such housing is "tailored to [seniors'] specific needs." *See* House Report, *supra*, at 21. Congress identified those specific needs by requiring senior housing to have "significant facilities and services specifically designed to meet the physical or social needs of older persons." 42 U.S.C. § 3607(b)(2)(C)(i). Thus, any legitimate value is derived from the existence of facilities tailored to seniors' needs. Such value was not found here. The only change at Eden Roc was the termination of the adults-only policy, not the elimination of significant services or facilities. Consequently, the only lost value was the value placed on discriminatory housing practice, which is a "value" we cannot sanction.

The City also argues there was no "interference" because the arbitrator's decision did not cause the managers of Eden Roc to change the park's policies or practices. Section 3617 does not require one such as Borello who is interfered with to capitulate to the interference. *See* 42 U.S.C. § 3617. This court has previously stated that § 3617 may involve a "situation where no discriminatory housing practice may have occurred at all ... because the rights have actually been respected by persons who suffer consequent retaliation." *Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir.1975); *see also United States v. Gilbert*, 813 F.2d 1523, 1528 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987), *and cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990). This is such a case: In response to terminating a discriminatory practice, the City penalized Borello by forcing Borello to forego a portion of its income with no corresponding savings in costs. This alone was sufficient as a matter of law to constitute interference.

**B.**

The City argues the Eden Roc Mobilehome Park was a legitimate senior housing facility when the 1988 Amendments were enacted. Therefore, the City argues, by terminating the policy, the tenants were deprived of a legitimate housing service and were entitled to a rent reduction under the rent control ordinance. The district court, however, concluded that Eden Roc did not qualify for the senior housing exemption. We agree.

In enacting the 1988 Amendments, Congress recognized "that some older Americans have chosen to live together with fellow senior citizen[s] in retirement-type communities." House Report, *supra*, at 21. It therefore exempted "housing for older persons" from the familial-status provisions of the FHA. *See* 42 U.S.C. § 3607. Section 3607(b)(2) describes three types of housing that qualify as housing for older persons, one of which is housing

intended and operated for occupancy by at least one person 55 years of age or older per unit. In determining whether housing qualifies as housing for older persons under this subsection, the Secretary shall

develop regulations which require at least the following factors:

(i) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and

(ii) that at least 80 percent of the units are occupied by at least one person 55 years of age or older per unit; and

(iii) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older.

42 U.S.C. § 3607(b)(2)(C).

"Exemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination." *Massaro v. Mainlands Section 1 & 2 Civic Ass'n,* 3 F.3d 1472, 1475 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *accord United States v. Columbus Country Club,* 915 F.2d 877, 882–83 (3d Cir.1990) (en banc), *cert. denied,* 501 U.S. 1205, 111 S.Ct. 2797, 115 L.Ed.2d 971 (1991). Housing must at least meet the above three requirements to qualify for the exemption.

■ The City argues Eden Roc had "significant facilities and services." We disagree. In compliance with a congressional mandate, the Secretary of HUD has promulgated regulations providing the minimal requirements and further clarifying them. *See* 24 C.F.R. § 100.304 (1993); *see also* 42 U.S.C. § 3607(b)(2)(C). The regulations discuss the "significant facilities and services" requirement:

"Significant facilities and services specifically designed to meet the physical or social needs of older persons" include, but are not limited to, social and recreational programs, continuing education, information and counseling, recreational, homemaker, outside maintenance and referral services, an accessible physical environment, emergency and preventive health

care of [sic] programs, congregate dining facilities, transportation to facilitate access to social services, and services designed to encourage and assist residents to use the services and facilities available to them. . . .

24 C.F.R. § 100.304(b)(1). Although a facility need not have all these features, Eden Roc did not have enough to qualify. The arbitrator found

that the services and facilities provided at Eden Roc include a swimming pool, sauna, shuffle board, laundry room and a reading room. There is a clubhouse where coffee is always available, the residents play cards and bingo and meet to socialize, the resident's club and ladies club meet, and where potluck dinners and holiday celebrations are held. Additionally, Alameda County health officials come to the park monthly to check blood pressure and perform glaucoma checks and annually to provide for a more detailed physical. Health authorities also come to administer flu shots. City bus service is available at the entrance to the Park and taxi service is available to one's door. Doctors' offices and a hospital are located within a one mile radius of the Park. Educational and other recreational opportunities are provided in the Hayward community.

Adopting these facts as true, the most the tenants can claim Borello did was "to have provided those facilities which any landlord expecting to please his or her tenants would provide." *Park Place Home Brokers v. P–K Mobile Home Park,* 773 F.Supp. 46, 52 (N.D.Ohio 1991). The only factors specifically tailored to seniors' needs are the visits by health care officials. Though this is a close question, we conclude that the park's facilities did not constitute "significant facilities" under the FHA. *See Massaro v. Mainlands Section 1 & 2 Civic Ass'n,* 796 F.Supp. 1499, 1501–03 (S.D.Fla.1992), *rev'd on other grounds,* 3 F.3d 1472 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *Lanier v. Fairfield Communities, Inc.,* 776 F.Supp. 1533, 1536–37 (M.D.Fla.1990).

Even if Eden Roc had met this requirement, it did not satisfy the third factor. The

City argues Borello expressed an intent to provide senior housing because it advised realtors that prospective tenants should be seniors. The FHA requires the landlord to publish and adhere to "policies and procedures which demonstrate an intent by the owner or manager to provide housing *for persons 55 years of age or older.*" 42 U.S.C. § 3607(b)(2)(C)(iii); *see also* 24 C.F.R. § 100.304(c)(2). But, even before Borello created an open park on January 1, 1990, the park's written policy was to rent to persons over 18, not to persons over 55.

The City claims the park would have met these requirements if Borello had followed through with its representations to provide senior housing,[2] and therefore Borello should not be able to invalidate the rent reduction. We disagree. At the time the 1988 Amendments became effective, Eden Roc simply did not qualify for the senior housing exemption. *See Massaro,* 3 F.3d at 1479; *Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1032–33 (11th Cir.1992) (condominium complex violated FHA's prohibition against discrimination based on familial status because by-laws prohibited residents under the age of 16). Borello had a choice to terminate the adults-only policy or to convert to senior housing. We refuse to adopt a rule that would deprive landowners of this choice.

### C.

■ The City argues it should not be held liable for the arbitrator's actions because the arbitrator was an independent adjudicatory officer, not a city employee. The district court considered this argument and concluded that the City was liable because "the arbitrator acted as [the City's] agent in an administrative not judicial proceeding." [D.Ct.Op. at 10.] We agree. The arbitrator's authority was derived solely from the City's appointment in accordance with the City's ordinance. Without this delegation of power, the arbitrator would have had no authority to interpret or enforce the City's rent control ordinance.

■ The City suggests its actions are protected by arbitral immunity. Arbitral immunity ordinarily protects the individual arbitrator from liability, *see Wasyl, Inc. v. First Boston Corp.,* 813 F.2d 1579, 1582 (9th Cir. 1987) ("case law dictates that arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings"); *Austern v. Chicago Bd. Options Exch.,* 898 F.2d 882, 885–86 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990), so the City cannot claim arbitral immunity shields it from liability.

■ The City also claims it was merely a sponsoring organization, and consequently should not be held liable for the arbitrator's decision. Courts have held that a sponsoring board will not be liable for an arbitrator's decisions, *see, e.g., Corey v. NYSE,* 691 F.2d 1205, 1209 (6th Cir.1982), but the City does not qualify as a sponsoring board. A sponsoring organization has no adjudicatory power, but nominates an impartial arbitrator. *See Ozark Air Lines v. National Mediation Bd.,* 797 F.2d 557, 563–64 (8th Cir.1985). "It merely mediates *voluntarily* submitted disputes." *Id.* at 564 (emphasis added). Borello did not voluntarily submit to the arbitrator, but was compelled by the City to do so. Because the City of Hayward appointed the arbitrator pursuant to an ordinance mandating arbitration, the City is liable for the arbitrator's interpretation and enforcement of its rent control ordinance.

### III

■ The United States requested declaratory, injunctive and monetary relief, as well as punitive damages. The district court only awarded a permanent injunction that prohibited the City from interpreting its rent control ordinance in contravention of the FHA.

---

2. The City-appointed arbitrator suggested that the mobilehome park might fit within the "grandfather clause" for "adult-only housing developments which currently did not meet the Act's definition of housing for older adults." The grandfather clause, however, applies only to "persons residing in such housing as of September 13, 1988, who do not meet the *age requirements* ...." 42 U.S.C. § 3607(b)(3)(A) (emphasis added). It does not "grandfather" housing that lacks "significant facilities," or that was not intended for persons 55 or older.

It reasoned that "an award of compensatory and/or punitive damages is discretionary. On this record, Hayward's actions were neither frivolous, malicious nor oppressive." [D.Ct.Order at 12.]

The United States argues the district court should have given the United States the opportunity to prove actual damages because the FHA's compensatory damages provision is not discretionary.[3] The damages provision for actions brought by the United States is found in 42 U.S.C. § 3614(d)(1) (1988), which states:

In a civil action ... the court—

(A) may award such preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to assure the full enjoyment of the rights granted by this subchapter;

(B) may award such other relief as the court deems appropriate, including monetary damages to persons aggrieved; and

(C) may, to vindicate the public interest, assess a civil penalty against the respondent. . . .

The United States asks us to construe the "may" language in subsection (B) as mandating compensatory damages. At first blush, this argument appears to fly headlong into the face of the plain meaning of the word "may," but an examination of Supreme Court precedent and the legislative history demonstrates somewhat surprisingly to the contrary.

The Supreme Court's reasoning in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), and the legislative history of the 1988 Amendments indicate that if a party proves actual damages, a district court's award of compensatory damages is mandatory, not discretionary. In *Curtis,* the Supreme Court held that a party could demand a jury trial in a civil action under the FHA. *Id.* at 194, 94 S.Ct. at 1008. In deciding the case, the Court analyzed former § 3612(d) of the FHA, a predecessor dam-

ages provision, and found no discretion with respect to actual damages: "if a plaintiff proves unlawful discrimination and actual damages, he is entitled to judgment for that amount." *Id.* at 197, 94 S.Ct. at 1010. The court based this conclusion on its characterization of the claim as a legal claim for damages, not an equitable claim for restitution. *Id.; see also United States v. Balistrieri,* 981 F.2d 916, 927 (7th Cir.1992) (because government sought monetary damages to compensate individuals for emotional distress caused by discrimination, the "government's action was essentially a tort action for damages"), *cert. denied,* — U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993); *Woods–Drake v. Lundy,* 667 F.2d 1198, 1203 (5th Cir.1982) (directing district court "to award plaintiffs an amount sufficient to compensate them for their actual losses").

When Congress amended the FHA in 1988, it replaced former sections 3612 and 3613 with four new enforcement sections, one of which is § 3614. *See* House Report, *supra,* at 50–63. Former § 3612(c) stated: "The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, *and may award to the plaintiff actual damages* and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees...." 42 U.S.C.A. § 3612 (West 1977) (emphasis added). When it amended the enforcement provisions of the FHA, Congress did not substantially change the language of § 3614. If Congress disagreed with the Supreme Court's interpretation of former § 3612 in *Curtis,* it would have changed the language of the new damages provisions when it enacted the 1988 Amendments. We therefore conclude that Congress did not intend the courts to have discretion to award compensatory damages if a party has proven actual damages.

The House Report supports this conclusion. It states:

Section [3614(d)] provides the types of relief a court may award in a civil action

---

**3.** The United States seeks compensation for the landlord's lost rent from the date of the arbitra-

tor's award to January 1, 1993.

under this Section. Existing preventive relief continues, as well as other appropriate relief *including monetary damages for the persons aggrieved.* The Committee intends that relief may be awarded to all persons affected by the discriminatory housing practice. *Allowing the court to award monetary relief to persons aggrieved avoids later duplicative litigation as such persons bring actions to vindicate their rights.*

House Report, *supra,* at 40 (emphasis added) (footnote omitted). This language suggests actual damages are not discretionary because a court's refusal to award proven actual damages would not further the goal of avoiding duplicative litigation.

The City asks us to interpret the "may" language in the monetary damages provision as the Sixth Circuit has interpreted "may" in the punitive damages provision. In *Smith & Lee Assocs. v. City of Taylor,* 13 F.3d 920, 932–33 (6th Cir.1993), the Sixth Circuit construed subsection (C), the punitive damages provision, to give "complete discretion to the court 'to vindicate the public interest,' by using the word 'may.' " *Id.* at 932. In light of our previous discussion of the legislative history of the FHA's damages provisions, we decline to apply a similar interpretation of "may" to subsection (B).

### IV

Summary judgment for the United States was proper, but we remand to the district court so the United States may have the opportunity to prove Borello suffered actual damages. If the United States proves actual damages, the district court shall award compensatory damages.

Affirmed in part, reversed in part and remanded. Costs shall be assessed against the City of Hayward.