**UNITED STATES of America, Plaintiff,**

**and**

**Robert L. Sallee and Betty Ann P. Sallee, Plaintiff–Intervenors,**

**v.**

**TROPIC SEAS, INC.; Arthur L. Thayer; and Karl Lillie, Kent Giles, Paula Harper, Joseph Miccio, Frances Fox, Mary Reddin, Jean Campbell, Jack Pennington, Richard Quinn, Robert Muller, Clare Wells, Veronica Worth, Frank Sallee and Byron Mello, in their capacities as members of the Tropic Seas Board of Directors, Defendants.**

Civ. No. 94–00317 SPK.

United States District Court,
D. Hawai'i.

April 12, 1995.

Steven Alm, U.S. Atty., Thomas A. Helper, Asst. U.S. Atty., Honolulu, HI, for plaintiff.

Ellen Godbey Carson, Shelby Anne Floyd, Joseph P. Viola, Honolulu, HI, for plaintiffs-intervenors.

Gary W.B. Chang, Honolulu, HI, for defendant Tropic Seas, Inc.

James P. Dandar, Janice Wolf, Honolulu, HI, for defendant Arthur L. Thayer.

April Luria, David M. Louie, Honolulu, HI, for defendants Karl Lillie, Paula Harper, Joseph Miccio, Frances Fox, Mary Reddin, and Jean Campbell.

Randall Yamamoto, John T. Komeiji, Patsy H. Kirio, Honolulu, HI, for defendants Jack Pennington, and Richard Quinn.

Russell H. Ando, Harold Chu, Honolulu, HI, for defendants Robert Muller, Clare Wells, Veronica Worth, and Byron Mello.

Allan F. Suematsu, Virginia M. Chock, Honolulu, HI, for defendant Kent Giles.

Jonathan Ortiz, Carolyn S. Kiyota, Honolulu, HI, for defendant Frank Sallee.

## ORDER DENYING MOTION TO ABSTAIN, GRANTING IN PART PLAINTIFF–INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANTS PENNINGTON AND QUINN'S MOTION, AND DENYING OTHER MOTIONS

SAMUEL P. KING, District Judge.

### INTRODUCTION

Nine motions are before the court: (1) Plaintiff–Intervenors Robert and Betty Ann Sallee (the Sallees') Motion for Partial Summary Judgment, (2) Defendant Arthur Thayer's Motion for Abstention, or in the alternative for a Stay, (3) Defendant Kent Giles' Motion for Summary Judgment, (4) Defendants Veronica Worth and Byron Mello's Motion for Summary Judgment, (5) Defendants Karl Lillie, Paula Harper, Joseph Miccio,

Frances Fox, Mary Reddin, and Jean Campbell's Motion for Summary Judgment, (6) Defendants Jack Pennington and Richard Quinn's Motion for Partial Summary Judgment, (7) Defendant Frank Sallee's counter-motion for summary judgment, (8) Plaintiff United States' motion to strike Frank Sallee's counter-motion, and (9) Plaintiff United States' motion to strike Tropic Sea's joinder in Thayer's motion for abstention. Various parties submitted appropriate joinders.

Oral argument was held on March 16, 1995. The court heard argument on the Sallees' motion, as well as on portions of some of Defendants' motions. The motions not specifically argued were taken under advisement based upon written submissions. Ellen Godbey Carson, Esq., appeared for the Sallees, and Thomas Helper, Assistant United States Attorney appeared for the United States. Defendants were represented as follows: Gary Chang, Esq., for Tropic Seas, Inc.; James Dandar, Esq., for Thayer; April Luria, Esq., for Lillie, Harper, Miccio, Fox, Reddin, and Campbell; Russell Ando, Esq., for Muller, Wells, Worth, and Mello; Jonathan Ortiz, Esq., for Frank Sallee; Allan Suematsu, Esq., for Kent Giles; and Randall Yamamoto, Esq., for Pennington and Quinn.

For the reasons set forth the court (1) DENIES the motion to abstain, (2) GRANTS the Sallees' Motion for Partial Summary Judgment as to Tropic Seas, Inc., but DENIES the Motion as to the individual defendants, (3) GRANTS Pennington and Quinn's motion as to claims against them as individuals, and (4) DENIES all other motions.

### BACKGROUND

In 1973, Robert Sallee acquired a proprietary lease in a studio unit of Tropic Seas, a Waikiki cooperative apartment complex.[1]

Robert married Betty Ann a year later. The Sallees then lived together at Tropic Seas. Until 1989, Tropic Seas had an occupancy restriction prohibiting children less than 14 years old. The house rule read:

> Children shall be at least 14 years of age and be members of residing OWNERS' families to live at Tropic Seas. In case of occupancy other than by the owner and his family (such as renters, guests during owner's absence, etc.) occupancy shall be limited to single persons 20 years of age or more and to married persons of any age.

In 1986, Betty Ann became pregnant and, due to the occupancy restriction, the Sallees moved.

The record reflects that as far back as 1960 Tropic Seas also had another house rule restricting occupancy:

> 5. Occupancy. Apartments ordinarily will be limited to occupancy by the following number of persons: studio and one-bedroom apartments, two persons; two-bedroom apartments, three persons. This does not apply to houseguests.
>
> See Section IX for rule on children.

By 1971, the rule had been strengthened. It now reads:

> Occupancy *shall* be limited to not more than two persons for studio and one-bedroom apartments, and to not more than three persons for two-bedroom apartments. (emphasis added).

Tropic Seas also had another house rule in 1989 (which remains in effect today) regarding children. House Rule VII, No. 6 reads:

> Children shall not loiter or play in the halls, stairways, elevator or other common areas. *Parents and/or hosts of children who are guests are responsible for their*

---

1. The unit is 595 square feet, including an enclosed lanai of 110 square feet. The exact square footage of "superficial living area" of the unit is open to some dispute, as is the precise nature of the lanai's enclosure. Nevertheless, a City Building Department head avers that the Department is flexible regarding square footage requirements for sleeping rooms in cases involving children and looks into each situation separately in determining whether the Housing code has been violated. The City Building Department confirmed in writing on August 5, 1993 that, according to

City code requirements, the unit can accommodate a family of three. The City Building Department had earlier confirmed that the housing code permits the superficial floor area of the kitchen to be included in the living room floor area. As explained *infra,* any dispute regarding the square footage does not prevent summary disposition because Tropic Seas' occupancy provisions are not based on square footage and apply equally to larger one-bedroom units as well.

*behavior.* (emphasis added to show sentence revised on 8/16/89).

In 1988, Congress passed the Fair Housing Amendments Act of 1988 (The Act). The Act, among other things, amended the Fair Housing Act, 42 U.S.C. § 3601 et seq., to prohibit discrimination in housing based on "familial status." "Congress found widespread discrimination against families with children and enacted the 1988 Amendments to protect this social institution from discriminatory housing practices. The goal of [the Act] was to make more housing opportunities available to families with children." *United States v. City of Hayward,* 36 F.3d 832, 834 (9th Cir.1994). The Act became effective in March of 1989. *Id.*

Given the Act's impending effective date, Tropic Seas repealed its house rule prohibiting children under 14 years of age on January 16, 1989.[2] However, Tropic Seas did not repeal the occupancy provision. Also, in August 1989, Tropic Seas modified House Rule VII No. 6 regarding children loitering in common areas (although there is no evidence that the modification was in response to the Act).

Following passage of the Act, the Sallees decided to move back into Tropic Seas after March 1989 (after the Act's effective date). On January 28, 1989, Karl Lillie as President of the Board of Directors of Tropic Seas, wrote the Sallees a letter stating in part:

The Board of Directors of Tropic Seas, Inc. understand it is your intention to occupy Apt. # 306 with your child after March 12, 1989 per the new Fair Housing Amendments Act of 1988, Public Law 100–430.

You have received a copy of [the January 16, 1989 resolution] deleting Sec. 2 in its entirety to conform with the Public Law which prohibits discrimination respecting

people with children living in a unit. There is no problem with that; however, we have received the opinion of our attorney as to the number of persons occupying a studio apartment in our complex and enclose a copy of same for your perusal.

In turn, the opinion letter of Tropic Seas' attorney dated January 23, 1989, reviewing the pertinent house rules regarding occupancy and the Honolulu Housing Code, stated in part:

... I therefore don't believe that the Housing Code has any applicability to the Tropic Seas project. Under the Housing Code, Section 25–4.3(b), if applicable, a 485 square foot studio apartment could be occupied by up to eight persons!....

. . . .

In conclusion, I wish to reiterate that in our opinion, a 485 square foot studio apartment at the Tropic Seas cannot be occupied by more than two persons.

On April 18, 1989, Lillie again wrote to the Sallees. He wrote in part:

May we remind you that when you purchased your apartment you signed an Assignment of Lease (Proprietary Lease), which obligates you to obey the House Rules, an addendum to the Proprietary Lease.

. . . .

Therefore, upon further advice from our attorney ... it is the unanimous decision of the Board of Directors to deny occupancy of Apt. [# 306], a studio apartment, by a family of three persons.

On September 27, 1989, Tropic Seas' attorney wrote a letter to the Sallees stating in part:

The Board of Directors of Tropic Seas, Inc. has been advised that your family of

---

**2.** Tropic Seas' Board of Directors approved the following resolution on January 16, 1989:

WHEREAS, the Board of Directors considers it advisable to amend the House Rules of Tropic Seas, Inc. to conform with the new Fair Housing Amendments Act of 1988 signed into law by President Reagan on September 13, 1988, and

WHEREAS, the new 'Act' prohibits discrimination respecting people with children from liv-

ing in a unit even if restriction was permitted under Hawaii law, and

WHEREAS, the new 'Act' is silent regarding the maximum number of occupants permitted to occupy a unit,

THEREFORE BE IT RESOLVED THAT *Tropic Seas Inc. House Rules, Article II, OCCUPANY [sic] RESTRICTIONS, Section 2. AGE, be deleted in its entirety.*
(emphasis in original).

three is planning to occupy Apartment No. 306 in the near future.

....

This is to inform you that if you violate the House Rules by moving a family of three into Apartment No. 306, the Board of Directors has requested that we commence legal proceedings against you[.]

Nevertheless, the Sallees and their son moved back into their unit in October of 1989. After moving back, Tropic Seas through its board, or individual board members, made several statements regarding children at Tropic Seas in general and the Sallees in particular. For example, in March 1990, Defendant Giles as Vice–President of the Tropic Seas Board sent a letter to Jack Kemp, then-Secretary of the United States Department of Housing and Urban Development (HUD). The letter reads in part:

We are shocked ... that HUD has failed to take note of the fact that the Tropic Seas, Inc. apartments, the common areas and the grounds are absolutely unsafe for young children.

....

It is not in anyone's best interest to force the exposure of young children to known safety hazards and the owner occupants of this coop to almost certain financial ruin. The first serious injury or death of a young child due to a known unsafe condition could result in a ruinous multi-million dollar judgement that would relieve many of the present owners of their life savings.

....

The owners of Tropic Seas Inc. are absolutely not in any position to bear the financial burden of the additional tort liability incurred if HUD requires young children to be admitted as occupants of these buildings.... We are unable to take advantage of the 55 year old exemption because one of our two buildings did not meet the 80% requirement on the cut off date.

In view of the above, we are seriously considering the reinstatement of our previous occupancy age restriction of 14 years of age or older. We are therefore asking for your opinion as to whether we would or would not be in violation of the FHAA if we reinstate our previous occupancy age restriction of 14 years of age.[3]

Additionally, Defendant Thayer (appointed by Tropic Seas on November 14, 1989 to answer any questions related to a HUD investigation on behalf of the Sallees), submitted a resolution to Tropic Seas members to obtain approval to seek an exemption from the Act. The resolution of February 9, 1991 stated in part:

WHEREAS 1. The Fair Housing Amendment Act (FHAA) of 1988 has required Tropic Seas Inc. to cancel the House Rule (in force for 30 years) which prohibited children under 14 years of age from residing on the premises and

....

WHEREAS 2. Tropic Seas Inc. apartments, common areas and grounds are unsafe for children under 14 years of age and

WHEREAS 3. In this age of litigation, the first suit based upon the injury or death of a child due to a known building safety defect could result in a multi-million dollar judgment against Tropic Seas Inc. and

....

WHEREAS 6. A poll of several local real estate experts on cooperative apartments indicates that the return to the previous House Rule prohibition against children residing on the premises would certainly increase and perhaps double the value of Tropic Seas Inc. apartments and

....

THEREFORE BE IT RESOLVED:

1. That a second attempt be made to obtain from the Secretary of HUD an exemption which would permit Tropic Seas

---

**3.** The response from HUD noted, in part:

.... The Act does not provide an exemption based on the unsuitability of a property for occupancy by children.

.... [H]ousing providers and operators may make reasonable rules to protect the health and safety of children. The determination of whether these rules act unreasonably to discriminate against families with children is made on a case-by-case basis as complaints are received.

Inc. to exclude children under 14 years of age from living on the premises....

The board also wrote to the Sallees notifying them that their son was seen unattended in the stairwells, elevator and laundry room. The record also contains a handwritten memorandum from a board member to Tropic Seas' attorney stating in part "Robert & Betty Ann are making our dwelling a *slum* condition." And the record contains other similar evidence.

On March 11, 1991, Tropic Seas passed a resolution[4] reading in part:

> BE IT RESOLVED THAT the Board of Directors is hereby authorized to proceed with termination of the lease of or the eviction of the Robert L. Sallees and son under whatever provision of the Tropic Seas Proprietary lease and/or the Tropic Seas Articles of Association that our attorney determines to be appropriate.

Thereafter, in September of 1991, Tropic Seas filed a breach of contract action in state court, attempting to evict the Sallees. The Sallees counterclaimed on several grounds including that Tropic Seas' enforcement of the house rules regarding occupancy and loitering of children violates the Fair Housing Act and state fair housing laws.

On April 26, 1993, the State of Hawaii Civil Rights Commission issued a Determination of Reasonable Cause to Believe that Unlawful Discrimination Practices have been Committed by Tropic Seas against the Sallees, based upon state laws.[5]

On December 17, 1993, the Sallees moved for summary judgment on certain counts (including violations of the Fair Housing Act) of their counterclaim in the state court action.[6] State Circuit Judge Wilfred Watanabe granted the Sallees' motion on May 23, 1994, finding that Tropic Seas violated the Fair Housing Act. During the pendency of that motion, on March 8, 1994, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against Tropic Seas and Arthur Thayer, and Members of the Board of Directors of Tropic Seas from 1989 to 1991 (including Lillie, Giles, Harper, Miccio, Bloedon, Fox, Reddin, Olson, Campbell, Pennington and Quinn).[7] Judge Watanabe subsequently denied a motion to reconsider his May 23, 1994 motion, and certified the judgment on the counterclaim as final pursuant to Hawaii Rule of Civil Procedure 54(b) on January 17, 1995.[8]

Meanwhile, following HUD's Determination of Reasonable Cause, the United States filed the instant action on April 29, 1994. The United States named Tropic Seas, Inc. and Thayer; and individual members of Tropic Seas' board, Defendants Lillie, Giles, Harper, Miccio, Bloedon, Fox, Reddin, Olson, Campbell, Pennington, Quinn, Muller, Wells, Worth, Sallee and Mello, in their capacities as board members.[9] The court granted the

---

4. Apparently in procedural violation of Tropic Seas' Proprietary Lease.

5. For example, HAR § 12–46–307 provides, in part:

 **Discrimination on the basis of familial status.** It is a discriminatory practice for an owner or any person engaging in a real estate transaction ... to:
 (1) Refuse to engage in a real estate transaction with a person because of familial status;
 (2) Impose house rules, by-laws, or other provisions, established by a ... cooperative association ... which by intent or effect discriminate against a person because of familial status.
 *Example:* House rules (e.g. "two person limit to a bedroom") which have the effect of discriminating ("adverse impact") against persons with children (because the overall square footage is large enough under housing code for three persons) are unlawful unless the rule can be justified by establishing a business necessity.

6. Earlier, on November 11, 1993, Judge Watanabe had entered judgment on the original complaint regarding breach of contract, against Tropic Seas and in favor of the Sallees. Tropic Seas appealed that judgment to the Hawaii Supreme Court. The appeal is pending.

7. Two years earlier, HUD had found no reasonable cause of discrimination. The second complaint, instituted in 1993, included events occurring, or information made available, after the first investigation. The first HUD finding did not immunize Tropic Seas from liability.

8. Appeal of this judgment and subsequent consolidation by the Hawaii Supreme Court is anticipated.

9. At oral argument, the United States represented that Defendants Dan Bloedon and Pat Olson

Sallees leave to intervene, and they filed a complaint in intervention. Tropic Seas filed a counterclaim in this action for breach of contract and indemnification.

As set forth in the introduction, nine motions are now before this court. The court deals first with the motion to abstain, then with the Sallees' motion for partial summary judgment, followed by the individual Defendants' motions.

## DISCUSSION

### I. Thayer's Motion for Abstention.

■■■ Defendant Thayer, joined by most of the other defendants,[10] asks the court to abstain from or stay the instant action,[11] under the doctrine enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and clarified in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Under this "abstention" doctrine,[12] a federal court may defer to a pending state court action that raises the same issue. Because the state court judgments are on appeal to the Hawaii Supreme Court, Thayer asserts that this court should abstain.

■■■ The factors to consider in determining whether to abstain include:

(1) whether either the state or federal court has exercised jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the federal and state courts obtained jurisdiction.

were not served. Accordingly, Bloedon and Olson are dismissed from this action.

10. The United States, joined by the Sallees, moves to strike the joinder of Defendant Thayer because Thayer violated the Rule 16 scheduling conference order by filing a substantive motion without leave of court after the motions deadline of February 8, 1995 (the Thayer's joinder was filed on February 23, 1995). This would require a finding that the joinder was actually a motion. Although the joinder does make extensive argument and includes evidence, technically it is not a motion. The court DENIES the motion to strike.

*40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir.1992) (citations omitted). The court also considers (1) whether state or federal law controls and (2) whether the state proceeding is adequate to protect the parties' rights. *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir.1989) (citing *Moses Cone*, 460 U.S. at 25–26, 103 S.Ct. at 941–42). The decision to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

A federal court should abstain under the *Colorado River* doctrine only in "exceptional circumstances." *Id.* at 19, 103 S.Ct. at 938. Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given to them." *Id.* at 15, 103 S.Ct. at 936 (footnote and internal ellipses omitted). The "task ... is not to find some substantial reason for the *exercise* of federal jurisdiction ...; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25–26, 103 S.Ct. at 942 (emphasis in original).

■■■ Here, Thayer argues that judicial economy favors abstention. Thayer and Tropic Seas argue that the state court summary judgment decisions were clearly erroneous and will surely be overturned. They note that the state court assumed jurisdiction first, argue that it provides an adequate remedy, and point out that the state action has

11. For these purposes abstention is synonymous with a stay or a dismissal. *Moses Cone*, 460 U.S. at 28, 103 S.Ct. at 943 ("a stay is as much a refusal to exercise federal jurisdiction as a dismissal").

12. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 n. 5 (9th Cir.1989) ("[a]lthough commonly referred to as an abstention doctrine, the Supreme Court has flatly rejected this categorization") (citation omitted).

progressed to judgment while this case is relatively new.

The court, however, finds a lack of the "exceptional circumstances" as required by *Colorado River.* Perhaps most significant are the interests of the United States in the federal action. Although the government's interests overlap with the Sallees', they are not the same. Under 42 U.S.C. § 3614(b)(1)(A),

> The Attorney General may commence a civil action in any appropriate United States district court for appropriate relief with respect to a discriminatory housing practice[.]

Additionally, § 3614(d) provides:

> (1) In a civil action ... the court—
>
> ...
>
> (C) may, to vindicate the public interest, assess a civil penalty against the respondent—
>
> (i) in an amount not exceeding $50,000, for a first violation; and
>
> (ii) in an amount not exceeding $100,000, for any subsequent violation.

Although state courts apparently have concurrent jurisdiction to adjudicate certain Fair Housing Act questions, the government points out that under § 3614 it is restricted to bringing this action in federal court. It emphasizes that it is vindicating a public interest. The government also cites to two published district court cases where, given the government's interests, the court refused to abstain despite concurrent state proceedings. *See Oxford House–Evergreen v. City of Plainfield,* 769 F.Supp. 1329 (D.N.J.1991) and *United States v. Village of Palatine,* 845 F.Supp. 540 (N.D.Ill.1993). The *Palatine* court reasoned:

> the United States seeks to vindicate the public interest of providing for fair housing throughout the United States.... This concern is much broader than those of the state court defendants.... These remedies [under § 3614(a) and (d)] are not available in the posture of the present state court proceeding. Accordingly, as abstention would leave the United States without an adequate remedy to vindicate

the public interest, *Younger* abstention cannot apply.

845 F.Supp. at 543–44 (citations omitted). Although *Palatine* dealt with abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the reasoning applies equally here. The government is not a party to the state court action and by statute may only bring an action in federal court. And the government's interests here are the same as in *Palatine.* Additionally, this action contains at least one cause-of-action not pending in state court proceedings—a claim for retaliation under 42 U.S.C. § 3617.

More importantly, federal law is at issue. There is less reason to defer to a state court interpretation of federal law than to a state court interpretation of state law. *See Moses Cone,* 460 U.S. at 26, 103 S.Ct. at 942 ("the presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction]").

Finally, in *Colorado River* the Supreme Court upheld federal court deference to concurrent state proceedings primarily because the McCarran Amendment, 43 U.S.C. § 666 expresses a federal policy for avoiding piecemeal litigation by *allowing* the United States to be joined as a party in state court actions regarding certain water rights. 424 U.S. at 819, 96 S.Ct. at 1247. Here, the Federal Housing Act reflects the opposite policy; the United States is restricted to bringing an action in federal court. 42 U.S.C. § 3614(a) and (b).

For the preceding reasons, the court declines to stay the action. Thayer's motion is DENIED.

## II. *The Sallees' Motion for Partial Summary Judgment.*

The Sallees move for partial summary judgment (1) as to the claim that Defendants violated the Fair Housing Act, 42 U.S.C. § 3604, by discriminating based on familial status, and (2) on Tropic Seas' counter-claim for breach of contract. The Sallees are not now seeking judgment as to claims under 42 U.S.C. § 3617, individual liability, damages (under either § 3604 or otherwise), or as to attorney fees. The Sallees move based on

(1) offensive collateral estoppel and, alternatively, (2) on the merits of the Fair Housing Act.

Summary judgment shall be entered when: ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment without any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

The question is thus whether "reasonable minds could differ as to the import of the evidence." *Id.*

### A. Offensive Collateral Estoppel.

■ The Sallees assert that the prior state court decisions (1) granting summary judgment in the Sallees' favor on their counterclaim for violating the Fair Housing Act, and (2) granting judgment in the Sallees' favor on Tropic Seas' complaint for breach of contract, should both be given preclusive effect under the discretionary offensive collateral estoppel doctrine approved in *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).[13]

■ Federal courts are required by 28 U.S.C. § 1738 to give a state court decision the same preclusive effect that the decision would have in the state's own courts. *Robi v. Five Platters*, 838 F.2d 318, 322 (9th Cir. 1988); *Leong v. Hilton Hotels Corp.*, 698 F.Supp. 1496, 1499 (D.Haw.1988). Accordingly, this court looks to Hawaii law for principles of prior adjudication in analyzing the effect of the state court's earlier grants of summary judgment.

Hawaii prior adjudication law is set forth in several cases. *See Santos v. State*, 64 Haw. 648, 646 P.2d 962 (1982); *In re Dowsett Trust*, 7 Haw.App. 640, 791 P.2d 398 (1990); and *Rosa v. CWJ Contractors*, 4 Haw.App. 210, 664 P.2d 745 (1983).

The three critical issues in determining whether the principles of res judicata and collateral estoppel are applicable are:

Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

*Santos*, 64 Haw. at 653, 646 P.2d at 966 (citation omitted).

---

13. *Parklane* held that a *non-party* may assert offensive collateral estoppel against defendants in the prior suit. Some defendants argue that the Sallees were parties to the prior suit, and thus barred by res judicata from relitigating this case in federal court. However, the Sallees are inter-

venors here. The United States was not a party to the state suit. Although the Sallees might not be able to obtain double-recovery, notably, the damages portion of the state court litigation has been stayed pending resolution of Tropic Seas' appeals to the Hawaii Supreme Court.

The first issue is clear. The issues decided in state court are the same as those now before this court. Various defendants, however, question the second and third issues.

 First, the defendants argue that the state judgments are not final because they were obtained at summary judgment, and are on appeal to the Hawaii Supreme Court. However, final judgments were entered by the state court. Rule 54(b) certification was granted on the Fair Housing Act counterclaim, and partial judgment was entered in January of 1995; judgment on the complaint regarding breach of contract was entered on November 19, 1993. Summary judgment can constitute a final judgment for purposes of collateral estoppel. *Dicken v. Ashcroft*, 972 F.2d 231, 233 n. 5 (8th Cir. 1992). The preclusive effect of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided. *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir.1993). Tropic Seas, in particular, argues that the state judgments are not sufficiently firm to be accorded preclusive effect. As analyzed *infra*, the court finds ample evidence that Tropic Seas violated the Act. The state court decisions are well-grounded and are sufficiently firm to be accorded preclusive effect.

 Second, various individual defendants also argue that there is no privity between them and the defendant in the state court litigation. The state court action only involved the Tropic Seas, Inc., not the individual board members.

A determination of privity "requires careful examination into the circumstances in each case as it arises." *Dowsett Trust*, 7 Haw.App. at 646, 791 P.2d at 402 (citation omitted). "Adequate representation of the interests of the nonparty, and proper protection to the rights of the person sought to be bound, are major considerations in privity analysis." *Id.* (citations and internal quotation marks omitted). Most of the individuals here, in some manner, directed the actions of Tropic Seas in the state court action (or allegedly failed to take action to alleviate harm against the Sallees). However, it is unclear whether the individual defendants' interests were fully represented. In the pre-vious action, the individuals may not have had a full and fair opportunity or adequate incentive to litigate claims against them in their individual capacities. Factual issues remain. Accordingly, the court is unwilling to find that the individual defendants were in privity with Tropic Seas.

Thus, as to the individuals, the court DENIES the Sallees' motion. However, as to Tropic Seas, Inc., the privity argument is irrelevant. Therefore, as to Tropic Seas, Inc., the court GRANTS the motion. Tropic Seas is precluded from relitigating in federal court its liability under the Fair Housing Act. Similarly, the court GRANTS summary judgment in favor of the Plaintiffs on Tropic Seas' counterclaim for breach of contract in this action (which is identical to the claim in the state action). *See Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651 ("the preferable approach for dealing with [issue preclusion] in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant the trial courts broad discretion to determine when it should be applied.").

B. *The Merits of the Fair Housing Act.*

 Alternatively, even if the state court decisions were not given preclusive effect, the court also grants the Sallees' motion against Tropic Seas on the merits.

The Fair Housing Act provides that it is unlawful to

refuse to sell or rent … or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a) (1994). A cooperative apartment building is a "dwelling" within the meaning of the Fair Housing Act. *Robinson v. 12 Lofts Realty*, 610 F.2d 1032 (2d Cir. 1979).

"Familial status" means

one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals[.]

42 U.S.C. § 3602(k) (1994).

In determining whether the Fair Housing Act is violated, authorities are split regarding

the precise test to apply in a familial discrimination case. *See Keith v. Volpe,* 858 F.2d 467, 482–83 (9th Cir.1988), *cert. denied,* 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989); *Fair Housing Council v. Ayres,* 855 F.Supp. 315, 317 (C.D.Cal.1994). The Ninth Circuit has apparently not yet set forth the precise analysis. *Volpe,* 858 F.2d at 482; *Ayres,* 855 F.Supp. at 317.

"The Third and Eighth Circuits hold that proof of discriminatory effect alone is always sufficient to establish a violation of the Fair Housing Act." *Volpe,* 858 F.2d at 482. These circuits apply the tripartite analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate [non-discriminatory] reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

*United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir.1992). This test recognizes that "direct proof of unlawful discrimination is rarely available." *Id.*

On the other hand, the Fourth and Seventh Circuits require consideration of four factors: "(1) the strength of the plaintiff's showing of discriminatory effect, (2) whether there was some evidence of discriminatory intent, (3) what the defendant's interest was in taking the action complained of, and (4) whether the plaintiff sought to compel the defendant affirmatively to provide housing for [protected parties] or merely to restrain the defendant from interfering with individu-

al property owners who wished to provide such housing." *Volpe,* 858 F.2d at 483.[14] "It is not necessary under the Fourth and Seventh Circuits' analysis to demonstrate strong showings as to all four factors." *Id.*

This court finds that the Sallees would prevail under either statement of the test. Clearly, Tropic Seas' occupancy provision has a direct "discriminatory effect" on the Sallees; the provision impacts on them based on their familial status by restricting their choice of housing. The Sallees also proffer an affidavit from Dr. Michael Sklarz, a real estate and statistical expert who is Director of Research at Locations, Inc. Dr. Sklarz' analysis indicates that Tropic Seas' occupancy provision regarding studio and one-bedroom apartments would exclude 92 to 95 percent of all families with children, but only 19 to 21 percent of all families without children (for two relevant areas—the island of Oahu and the East Honolulu area). The expert evidence, uncontradicted by evidence from the Defendants, also provides some showing of "discriminatory effect."

This effect is a prima facie violation of the Fair Housing Act. *Badgett,* 976 F.2d at 1179 ("If the result of [a facially neutral occupancy] policy is a disparate impact on a protected class, facial neutrality will not save the restriction from violating the Act") (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Ayres,* 855 F.Supp. at 318 ("[HUD] has reaffirmed that facially neutral numerical occupancy restrictions violate the Act if they have a discriminatory effect, irrespective of intent"); *United States v. Lepore,* 816 F.Supp. 1011 (M.D.Pa.1991) (two-person occupancy limitation violated Fair Housing Act prohibition against familial status discrimination); *but see United States v. Weiss,* 847 F.Supp. 819 (D.Nev.1994) (denial of summary judg-

---

**14.** It is not so clear whether the tests are in fact distinct. "[The Seventh Circuit's] decision in [*Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977)] has been cited for the proposition that 'a significant discriminatory effect flowing from rental decisions is sufficient to demonstrate a violation of the Fair Housing Act.' That is correct in the sense that effect is probative of intent, so that an unexplained discriminatory effect may

by itself support an inference of discriminatory intent—an insight at the heart of the *McDonnell Douglas* method of proving disparate treatment. But the passage [cited] is misleading if used to equate discriminatory effect with liability in every factual situation to which section 3604 might be applied." *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1533 (7th Cir.1990) (citations omitted).

ment to plaintiffs where discriminatory effect disputed; grant of summary judgment to defendants where sufficient showing was made of "business necessity" for occupancy restriction).

Moreover, even if demonstrating disparate impact is insufficient to show a prima facie violation of the Fair Housing Act, the Sallees have produced ample evidence of discriminatory intent on the part of Tropic Seas. Defendant Giles' letter of March 27, 1990, signed in his capacity as Vice–President of the Tropic Seas' Board, written to HUD Secretary Kemp demonstrates that the concern was not occupancy standards, but rather was children at Tropic Seas. Giles has not filed an affidavit denying his motivation. Similarly, Defendant Thayer's [15] resolution of February 9, 1991, seeking a return to the previous house rule restricting children under age 14, indicates intent based on familial status (not a facially neutral reason). Notably, Thayer also did not offer an affidavit denying his motivation. The Giles letter and Thayer resolution are uncontradicted evidence of pretext on the part of Tropic Seas.

 The proffered explanation of child safety, even if sincere, does not prevent a finding of discrimination (indeed, such explanations are essentially admissions that the Sallees' familial status motivated, at least in part, the actions of Tropic Seas). *See United States v. Grishman,* 818 F.Supp. 21, 23 (D. Maine 1993) (Landlord who declined to rent to family, in part due to perception that the property was dangerous for children, had discriminated on the basis of family status in violation of the Fair Housing Act).

 Tropic Seas argues that its neutral occupancy provision is mandated by City Housing and State Health Codes. The Fair

Housing Act, as amended, specifically provides

> Nothing in this subchapter limits the applicability of any reasonable *local, State, or Federal* restrictions regarding the maximum number of occupants permitted to occupy a dwelling.

42 U.S.C. § 3607(b)(1) (emphasis added). In this regard, Tropic Seas notes that "HUD has a rule of thumb that an occupancy policy of two persons per bedroom is presumptively reasonable." *Badgett,* 976 F.2d at 1179. The argument, however, misses the mark.

Notably, § 3607(b)(1) refers to *governmental* restrictions. The Sallees are not attacking the City's occupancy restrictions; no one is asserting that City or State of Hawaii building or health codes are preempted by the Fair Housing Act.

> In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status, [HUD] will carefully examine any such *non-governmental* restriction to determine whether it operates unreasonably to limit or exclude families with children.

*Badgett,* 976 F.2d at 1179 (citing 24 C.F.R. Chapter I, Subchapter A, Appendix I at 693) (emphasis in original). "Rather than authorizing *any* facially neutral occupancy standard, the Fair Housing Act requires that a court examine the totality of the circumstances to determine whether the facially neutral standard results in discrimination against a protected class." *Id.* (emphasis in original).[16]

Applied here, Tropic Seas' occupancy restriction discriminates against the Sallees based on their familial status. *Ayres,* 855 F.Supp. at 318; *Badgett,* 976 F.2d at 1179; *Grishman,* 818 F.Supp. at 23; *Lepore,* 816 F.Supp. at 1023. In this regard, it is signifi-

---

**15.** Thayer was an agent of Tropic Seas. Defendant Thayers' counsel represented at oral argument that Thayer was appointed to represent Tropic Seas only for purposes of responding to formal discovery matters in the state court action—specifically, a deposition as a representative of the corporation. The record belies this representation. The board authorized Thayer to answer "any questions related to the ongoing HUD investigation of a complaint filed against Tropic Seas" on November 14, 1989—some two

years before any formal discovery in the state action and some four years before any in the federal action. He was "officially" appointed to Tropic Seas' legal committee on April 19, 1993.

**16.** Similarly, Tropic Seas' reliance on *City of Edmonds v. Washington State Bldg. Code Council,* 18 F.3d 802 (9th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 417, 130 L.Ed.2d 332 (1994) (argued March 1, 1995), is also misplaced.

cant that Tropic Seas' occupancy standard is more restrictive than City Housing Codes. Tropic Seas' restriction is not based on square footage of the units. The provision restricts both studio units as well as larger [17] one-bedroom units. And, as noted earlier, the City Building Department has specifically notified the Sallees that their unit may be occupied by a family of three. Thus, Tropic Seas' occupancy restriction is more restrictive than the City Housing Code both facially and as-applied.

■ Tropic Seas also argues that an alleged breach of contract by the Sallees provides a legitimate, nondiscriminatory reason for objecting to their occupancy. This argument, however, is circular because the provision that the Sallees allegedly breached is the same provision being challenged as discriminatory. Tropic Seas did not, for example, seek to evict the Sallees for breaching other terms of their provisional lease such as failing to pay a maintenance fee or keeping a large, noisy pet without prior permission. Moreover, the court has already determined, based upon the preclusive effect of the state court judgment, that the Sallees did not breach the lease.

■ Finally, Tropic Seas asserts that the Fair Housing Act is void for vagueness. Tropic Seas cites the occupancy exemption in § 3607(b)(1) and argues that persons of ordinary intelligence would not know that neutral occupancy provisions violate the Act. Tropic Seas' argument fails. This is a civil case. "To find a civil statute void for vagueness, the statute must be 'so vague and indefinite as really to be no rule or standard at all.'" *Seniors Civil Liberties Assn. v. Kemp,* 965 F.2d 1030, 1036 (11th Cir.1992) (citation omitted). Assuming, arguendo, that the statutory provisions at issue here are quasi-criminal, the vagueness claim also fails. *Id.; United States v. Gilbert,* 813 F.2d 1523, 1530 (9th Cir.), *cert. denied,* 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987); *Park Place Home Brokers v. P–K Mobile Home Park,* 773 F.Supp. 46, 54 (N.D.Ohio 1991). The Act is clear on its face that it is illegal to discriminate on the basis of familial status. Similar-

ly, § 3607(b)(1) is clear on its face regarding its application to government ordinances or rules.

■ Although the court grants summary judgment against Tropic Seas on the merits, the court denies the motion as applied to the individual defendants. Issues of material fact remain regarding the amount and degree of participation by each individual. Indeed, it appears that some may bear little responsibility for the discrimination. The individuals, however, may not assert that no discrimination took place.

In sum, the court GRANTS the Sallees' motion against Tropic Seas, Inc. (as to liability under 42 U.S.C. § 3604). Questions of causation and damages, among other things, remain. However, the court DENIES the Sallees' motion as to the individual defendants.

## IV. *Individual Defendants' Motions.*

### A. *Giles' Motion for Summary Judgment*

Giles seeks summary judgment on jurisdictional and procedural grounds, contending: (1) that HUD's failure to bring its charges of discrimination within the period specified by the Act deprives this court of jurisdiction over the matter; and (2) that the Sallees failed to notify Giles and the other Defendants of their election to sue within 20 days after HUD issued its determination. Other defendants joined in Giles' motion.

1. *Whether the Instant Action is Time Barred Because HUD Did Not Issue Its Charge of Discrimination Within 100 Days After the Sallees Filed their Complaint.*

■ Giles notes that the Sallees first filed a complaint with HUD on January 6, 1993 and filed their last amended complaint on March 31, 1993. HUD issued its Determination of Reasonable Cause and Charge of Discrimination on March 8, 1994—338 days after the Sallees filed their last amended complaint. Giles contends that the instant action is thus time barred under 42 U.S.C. § 3610(g)(1), which provides, in pertinent

---

**17.** The record indicates one-bedroom units at Tropic Seas are over 700 square feet.

part, that the Secretary of HUD shall, "within 100 days after the filing of the complaint" determine whether reasonable cause exists to find that a discriminatory housing practice has taken place." The statute provides further that if the Secretary is unable to make the determination within 100 days, he or she "shall notify the complainant and respondent in writing of the reasons for not doing so." HUD provided such notice to the respondents in the instant case by way of a letter dated April 20, 1993.

Giles contends that the 100–day requirement must be read as mandatory rather than directory, i.e., as a statutory limitation period after which the United States can no longer bring suit. Giles acknowledges the language that permits HUD to extend its investigation beyond the 100 days upon notice to the parties of the reasons for the delay. However, he also argues that HUD's notice was itself tardy [18], thus requiring dismissal of the instant action.[19] Giles also contends that because the notice of impracticability was sent only to the Tropic Seas board and two individual board members [20], not including Giles, he was never properly notified of the delay. The Government argues, however, that as members of the board of directors, Giles and his co-defendants must be charged with constructive notice of HUD's communication with the board.

Contrary to Giles' assertion, both the language of the statute and what little case law exists on the matter suggest that the 100–day provision is non-jurisdictional. *See, e.g., United States v. Curlee*, 792 F.Supp. 699, 700 (C.D.Cal.1992) (neither HUD's inability to complete its investigation within 100 days nor its failure to notify respondents of the delay within the 100–day period deprives court of jurisdiction); *United States v. Beethoven Limited Partnership*, 843 F.Supp. 1257, 1262–63 (N.D.Ill.1994) (review of case law); *United States v. Scott*, 788 F.Supp. 1555, 1558 (D.Kan.1992) ("Congress did not intend the 100–day statutory deadline to operate as a jurisdictional prerequisite or a statute of limitations").

Giles relies exclusively on *United States v. Aspen Square Management Co., Inc.*, 817 F.Supp. 707 (N.D.Ill.1993), *vacated*, 1993 WL 268352 (N.D.Ill. June 28, 1993) [21], in which the court held that HUD's failure to either issue its charge of discrimination or a notice of impracticability within the 100–day period acted as a jurisdictional bar to maintenance of HUD's suit in district court. Even assuming that *Aspen* retains any precedential value after vacatur, it appears to be contrary to the clear weight of authority from other districts, and has even been criticized by other judges in the same district. *See Beethoven*, 843 F.Supp. at 1262–63.

In fact, most courts that have addressed the issue have held that HUD's failure to complete its investigation within the 100–day period will not require dismissal of a fair housing complaint absent a showing of substantial prejudice to the respondent. *See, e.g., Baumgardner v. HUD*, 960 F.2d 572, 578 (6th Cir.1992); *Kelly v. Secretary*, 3 F.3d 951, 956 (6th Cir.1993). *Accord United States v. Forest Dale, Inc.*, 818 F.Supp. 954, 966 (N.D.Tex.1993).

■ Giles contends that he and the other defendants were prejudiced by HUD's delay because absent timely administrative action by the agency, they continued to maintain their eviction action against the Sallees in

---

**18.** Giles raised this argument for the first time in his reply memorandum, which was filed on March 13, 1995, eight days late under the local rules.

**19.** Giles contends in his reply memorandum that the 100–day deadline, measured from the filing of the Sallees' first complaint, was April 16, 1993. He notes that HUD did not send its notice of impracticability until April 20, 1993, four days late. However, in his initial memorandum in support of his motion for summary judgment, Giles measured the 100–day period from the filing of the Sallees' second amended complaint, for a deadline of July 9, 1993. HUD's notice of

impracticability was issued well before this deadline.

**20.** The individual letters were sent to Erdman Campbell, president of the Tropic Seas board of directors at the time, and Col. Arthur Thayer, who had been appointed by the board to act as its agent in the dispute with the Sallees.

**21.** Giles did not note in his memorandum in support of his motion for summary judgment that *Aspen* was vacated more than a year and a half ago.

state court, thus subjecting themselves to the claim of engaging in a continuing discriminatory practice. However, the eviction action was filed in September 1991, well before the Sallees filed the discrimination complaint that led to the instant action. The defendants did not rely on HUD's inaction in bringing their lawsuit. As Giles offers no other support for his contention that he was prejudiced by the delay, his motion for summary judgment on the basis of said delay is DENIED.

2. *Whether the Instant Action is Time–Barred Because Giles Did Not Receive Notice of the Sallees' Election to Sue.*

■ Giles' second contention, that the instant action is time-barred because he did not receive notice of the Sallees' election to sue within the time period required by statute, is meritless. Giles cites 42 U.S.C. § 3612(a), which provides, in pertinent part, that when HUD files a charge of discrimination, an aggrieved person may elect to have that charge decided in a civil action. Such election must be made within 20 days after receipt of the charge, and must be accompanied by notice to all other complainants and respondents. An additional six days is provided for by HUD regulations where service and filing is by mail, as in the instant case.

HUD issued its charge of discrimination on March 8, 1994. On March 31, 1994, the Sallees, through their counsel, elected to proceed in district court. Notice of the election was sent to Dennis O'Connor, who had been designated by the Tropic Seas board of directors as counsel for purposes of the HUD complaint. Giles contends that he never *personally* received notice of the Sallees' election to sue, and the suit should thus be barred. However, it is clear from the record that the Sallees' complied with the 20–day requirement. Giles and the other members of the Tropic Seas board, having designated O'Connor as their counsel, cannot now complain that notice of the Sallees' election was given only to O'Connor and not to them.

Giles' motion for summary judgment is DENIED.

B. *Worth and Mello's Motion for Summary Judgment.*

■ Worth and Mello contend in their motion for summary judgment that they engaged in no conduct during their terms on the Tropic Seas board of directors for which they can be held liable under the Fair Housing Act.

According to her affidavit, Worth did not join the board of directors until April 1994. She notes that the complaint in the instant action was filed on April 29, 1994, at which point she had served on the board for less than a month. She contends she knows of nothing she has done during her tenure on the board to harm the Sallees.

Mello states that he became a member of the Tropic Seas board in April 1993 and took a leave of absence in August 1993, never returning to the board. The Sallees note that Mello's term on the board actually began in March 1993 and did not officially end until January 1994, when Mello informed the board that he would be relinquishing his seat. The Sallees do not, however, offer any evidence to contradict Mello's sworn assertion that he was on a leave of absence during most of his term and that his actual service on the board was limited to the period between April and August of 1993.

Both Worth and Mello note that the dispute between Tropic Seas and the Sallees began in 1986, long before either of them served on the board. They also note that Tropic Seas filed its state court eviction action against the Sallees in September 1991, and the litigation was well under way by the time they joined the board.

The Sallees point to a number of acts or omissions allegedly committed by the board during the tenures of Worth and Mello. These include: the board's April 1993 appointment of Defendant Thayer to the board's legal committee to assist in opposing the Sallees' fair housing claims; the board's failure to drop its state court litigation in April 1993, after the Hawaii Civil Rights Commission issued its Determination of Reasonable Cause to Believe that Unlawful Discrimination Practices have been Committed at Tropic Seas; the board's April 1994 rec-

ommendation that shareholders vote against a resolution that the house rules be updated and made consistent with current law regarding occupancy issues; and the board's recommendation, made during an April 1994 shareholders meeting (at which Worth was present as an elected board member and acted as secretary), that shareholders vote against a resolution introduced by the Sallees seeking the dismissal of Tropic Seas' claims against them.

All of the acts and omissions alleged by the Sallees are attested to in affidavits or evidenced by exhibits authenticated by way of affidavits.

■■■■ Because the duty to comply with the Fair Housing Act is nondelegable, a corporation's officers and directors may be held individually liable for their failure to ensure the corporation's compliance. *See United States v. Youritan Constr. Co.*, 370 F.Supp. 643, 649 (N.D.Cal.1973), *aff'd in part and rev'd in part on other grounds*, 509 F.2d 623 (9th Cir.1975); *Saunders v. General Services Corp.*, 659 F.Supp. 1042, 1059 (E.D.Va.1987); *Harrison v. Otto G. Heinzeroth Mortgage Co.*, 430 F.Supp. 893, 897 (N.D.Ohio 1977); *United States v. L & H Land Corp., Inc.*, 407 F.Supp. 576, 580 (S.D.Fla.1976). This is so even where the individual director or officer did not actively participate in the alleged discrimination and did not subjectively intend to discriminate against the complainant. *Saunders*, 659 F.Supp. at 1059.[22]

The acts and omissions alleged by the Sallees give rise to at least a genuine issue of material fact as to whether Tropic Seas engaged in discriminatory conduct during the tenures of Worth and Mello on the board of directors. Summary judgment in favor of Worth and Mello is thus not appropriate. Their motion is DENIED.

**C. *Punitive Damages.***

Defendants Lillie, Harper, Miccio, Fox, Reddin and Campbell seek partial summary judgment solely on the issue of punitive damages, contending that Plaintiffs have adduced no evidence that would warrant imposition of such damages.[23] They contend that nothing in the circumstances of the case or the Plaintiffs' pleadings could be deemed "clear and convincing evidence" that Defendants acted "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to consequences," as required for an award of punitive damages under Hawaii law. *See Masaki v. General Motors Corp.*, 71 Haw. 1, 6, 780 P.2d 566, 570 (1989).

■■■■ However, the award of punitive damages under the Fair Housing Act is governed by federal law, not Hawaii law. Under federal law, punitive damages may be awarded for a defendant's "reckless or callous disregard" of a Plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). No showing of malice or an intent to harm is required. An owner of housing—and by extension the member of a board of directors of the corporate owner of such housing—may be liable for punitive damages if he or she "knew of or ratified" a discriminatory act by the owner's agents or the corporation. *Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1100 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2961, 125 L.Ed.2d 662 (1993); *Miller v. Apartments and Homes of N.J., Inc.*, 646 F.2d 101, 111 (3d Cir.1981); *Williams v. City of New York*, 508 F.2d 356, 361 (2d Cir.1974); *Marr v. Rife*, 503 F.2d 735, 745 (6th Cir.1974).

■■■ In the instant case, Plaintiffs have alleged that the various defendants either participated in the alleged discriminatory acts of Tropic Seas or knew of and failed to

---

**22.** Defendants' reliance in their reply memorandum on the "business judgment rule" is misplaced. The rule insulates a director from liability to shareholders for actions taken in good faith and in the belief that such actions were in the best interests of the corporation. Defendants have cited no authority, and the court is aware of none, for the proposition that the rule will relieve an individual director of a cooperative of liability for the breach of his or her nondelegable duty to

ensure the cooperative's compliance with the Fair Housing Act. Obviously, the fact that board members may have perceived it to be in Tropic Seas' best interests to discriminate would not absolve them of liability for such discrimination.

**23.** Defendants Sallee, Worth, Mello, Pennington and Quinn have joined in the motion for partial summary judgment.

repudiate such acts. These allegations are supported by various affidavits and documentation authenticated by affidavits. There thus exists an issue of fact as to whether Defendants acted or, knowing of the alleged discriminatory acts by Tropic Seas, failed to act as required under the Fair Housing Act. Accordingly, summary judgment is not appropriate. The motion is DENIED.

### D. *Pennington and Quinn's Motion.*

Defendants Jack Pennington and Richard Quinn seek partial summary judgment as to the claims against them in their individual capacities, on the ground that their only involvement in the incidents giving rise to the instant suit was as members of the Tropic Seas board of directors. Contrary to the "spin" put on their motion by the Sallees' opposition, Pennington and Quinn *do not* argue in the instant motion that they cannot be held personally liable for discriminatory acts taken in their official capacities as members of the Tropic Seas board. Rather, they argue only that the United States and the Sallees have alleged no act or omission by the two outside their role as board members, and that the claims against them in their *individual* capacities should thus be dismissed.

In fact, the Sallees point to nothing in their opposition that would indicate the alleged objectionable conduct by Pennington and Quinn occurred outside the scope of their duties as board members. Rather, they focus instead on whether Pennington and Quinn may be held personally liable for the acts and omissions of the Tropic Seas board—a point that Pennington and Quinn do not dispute for purposes of the instant motion. Accordingly, the motion for partial summary judgment by Defendants Pennington and Quinn on the narrow issue of the claims made against them in their individual capacities is GRANTED.[24] Pennington and Quinn remain in the action for alleged acts or omissions committed while serving in their capacities as board members.

### E. *Frank Sallees' Motion.*

In his "counter motion" for summary judgment,[25] Defendant Frank Sallee makes much the same argument as is advanced by Worth and Mello, i.e., that he was not on the board at the time the alleged discriminatory acts were undertaken by Tropic Seas and he thus cannot be held personally liable for such acts. The Plaintiffs note, however, that Frank Sallee admits he was a member of the board from March 1992 to March 1994 and served as president of the board from March 1993 to March 1994. Plaintiffs allege that during these periods, the Tropic Seas board engaged in prohibited conduct by continuing to pursue its state court eviction action against the Sallees and by continuing to enforce allegedly discriminatory house rules. As already noted, because the duty of compliance under the Fair Housing Act is nondelegable, the members of a housing corporation's board of directors may be held personally liable for violations by the corporation. There remains a genuine dispute of material fact as to whether Defendant Frank Sallee participated or acquiesced in discriminatory conduct by Tropic Seas during his tenure on the board. Accordingly, his motion for summary judgment is DENIED.

### CONCLUSION

In sum, the court (1) DENIES Thayer's motion to abstain, (2) GRANTS the Sallees' motion for partial summary judgment as to liability against Tropic Seas, Inc., but DENIES the motion as to the individuals in their capacities as board members, (3) GRANTS Pennington and Quinn's motion for partial summary judgment for claims as individuals, and (4) DENIES all other motions.

IT IS SO ORDERED.

---

**24.** Defendants Muller, Wells, Worth, Mello, Lillie, Harper, Miccio, Fox, Reddin, Campbell and Thayer have joined in Pennington and Quinn's motion. However, their joinders are not motions on their own behalf. They have not met their initial burden, as have Pennington and Quinn, to set forth evidence distinguishing between acts or omissions in their official and individual capacities. Accordingly, summary judgment as to these Defendants is not appropriate.

**25.** The court, in an exercise of its discretion, DENIES the motion to strike the countermotion.